1  Jeffrey S. Bolender (Bar No. 174423)
   Bolender & Associates,
2  A Professional Law Corporation
   2601 Airport Drive, Suite 360
3  Torrance, CA 90505
   Telephone: (310) 784-2443
4  Facsimile: (310) 784-2444

5
   Attorney for Plaintiff,
6  EVANSTON INSURANCE COMPANY

7

8
                    UNITED STATES DISTRICT COURT
9
         NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION
10

11
   EVANSTON INSURANCE COMPANY,        Case No. C08 02099 JF
12 an Illinois corporation,
                                      DECLARATION OF ROGER
13              Plaintiff,            DEKRAKER IN SUPPORT OF
                                      PLAINTIFF EVANSTON INSURANCE
14 vs.                                COMPANY'S MOTION FOR PARTIAL
                                      SUMMARY JUDGMENT; EXHIBIT 1
15
   GHILLIE SUITS.COM, INC., a
16 Georgia corporation; TODD
   MUIRHEARD, a Georgia             Date  : Sept. 19, 2008
17 resident; JEREMY JAMES EHART,    Time  : 9:00 a.m.
   a Kansas resident; KRISTY        Place : Courtroom 3
18 EHART, a Kansas resident; and    Judge : Hon. Jeremy Fogel
   STEVEN RYAN McCLANAHAN, a
19 West Virginia Resident, and
   DOES 1 – 100,                    Complaint Filed : 4/22/2008
20                                   Trial Date: None Set
                Defendants.
21

22

23

24

25

26

27

28

---

                                                                      1
**DECLARATION OF ROGER DEKRAKER IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**
                                                   **CASE NO. C08 02099 HRL**

U:\Jeffrey\Ghillie Suits\MSJ\Partial.MSJ.DeKraker.Dec.v1.doc

**DECLARATION OF ROGER DEKRAKER**

I, Roger DeKraker, declare:

1.    I submit this declaration in support of Plaintiff Evanston Insurance Company's Motion for Partial Summary Judgment.  The statements in this declaration are based upon my personal knowledge, and if called upon to testify to the truth of said matters, I can and will do so under oath based upon my personal knowledge.

2.    I am and have been employed by Markel Southwest Underwriters ("Markel") for approximately two (2) years.  I hold the position of Claims Specialist in the Claims Department and have been so employed for two (2) years.  I am familiar with the practices and procedures in the Markel Claims Department.

3.    Markel performs claims handling services for insurance companies, including Evanston Insurance Company ("Evanston").

4.    On or about November 6, 2006, I received tender from Defendant Ghillie Suits.Com, Inc. ("GSC")requesting that Evanston provide it and its owner Todd Muirhead with a defense and indemnification regarding the underlying action, titled <u>Jeremy James Ehart, Kristy Ehart and Steven Ryan McClanahan v. Ghillie Suits.com Inc., et al.</u>, United States District Court,

**DECLARATION OF ROGER DEKRAKER IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C08 02099 HRL**

U:\Jeffrey\Ghillie Suits\MSJ\Partial.MSJ.DeKraker.Dec.v1.doc

Northern District of California, San Jose Division Case No. 06
06507 RS (the "Underlying Action"), pursuant to commercial
general liability insurance policy, No. CL041400001 (the
"Evanston Policy").

5.   Pending its investigation into the claims against GSC
and Mr. Muirhead raised in the Underlying Action, Evanston
elected to extend a defense to GSC and Mr. Muirhead under the
Evanston Policy, pursuant to reservations of rights as set
forth in letters from Evanston's coverage counsel in this
matter dated January 3, 2008, true and correct copies of which
are attached hereto as Exhibit 1.

6.   Evanston is currently providing GSC and Mr. Muirhead
with a defense in the Underlying Action under the Evanston
Policy, pursuant to the reservation of rights in Exhibit 1.

I declare under penalty of perjury under the laws of the
State of Arizona, the State of California, and the United
States of America that the foregoing is true and correct.
Executed on June 5, 2008 in Scottsdale, Arizona.

_____
Roger DeKraker, *Declarant*

# BOLENDER & ASSOCIATES
## A PROFESSIONAL LAW CORPORATION

2601 AIRPORT DRIVE, SUITE 360
TORRANCE, CALIFORNIA 90505

JEFFREY S. BOLENDER†
LAUREN M. CHUN
E. SUSIE WENDORFF

TELEPHONE 310 784 2443
FACSIMILE 310 784 2444

— OF COUNSEL —
MIKEL A. GLAVINOVICH
TALI MONROF

†ADMITTED IN CALIFORNIA AND HAWAII

January 3, 2008

**GHILLIE SUITS.COM, INC.**
1743 Rhonda Lane
Stone Mountain, GA 30087

*Via Certified Mail*

Attn: Todd Muirhead

Re: ***Ehart, et al. vs. Ghillie Suits.com, Inc., et al.***
    Case No.   : C06-06507
    Claim No.   : 00126843
    Policyholder : Ghillie Suits.com, Inc., et al.
    Policy No.   : CL 041400001 (05/19/2004 – 05/19/2005)
                : CL 041400008 (05/19/2005 – 05/19/2007)
    Our File No. : 07-80185

Dear Mr. Muirhead:

As you may recall from earlier correspondence, our office has been retained as insurance coverage counsel by Markel Southwest Underwriters, Inc., an affiliated underwriter manager for Evanston Insurance Company ("Evanston"), the general liability carrier for Ghillie Suits.com, Inc. ("Ghillie"). We understand that you are the president and owner of Ghillie. Please let us know if there is anyone else to whom we should direct this letter.

Evanston has been providing a defense to you and Ghillie in the above-captioned lawsuit (the "Ehart lawsuit") under Policy No. CL 041400001 via Paul Stephan, Esq. of the law firm Selman & Breitman. Attached hereto as Exhibit 1 is a copy of our firm's letter dated April 24, 2007, the terms of which are incorporated herein. Evanston will continue providing a defense to the complaint and cross-claim under a reservation of rights as supplemented by this letter. Please contact Mr. Stephan directly if you have any questions concerning the status of the lawsuit, including the status of any pending settlement discussions.

**EXHIBIT \_\_\_\_**

Mr. Todd Muirhead
January 3, 2008
Page 2

As you may be aware, plaintiffs recently demanded $2 million to settle the claims in the complaint against Ghillie. Plaintiffs claim that the Evanston insurance affords indemnity benefits in the amount of $2 million. As explained below, it is the position of Evanston that only one policy applies to this loss, i.e., Policy No. CL 041400001, and that under the policy's Each Occurrence Limit, only $1 million in indemnity benefits applies to this claim. Attached hereto as Exhibit 2 is a copy of our firm's letter dated October 11, 2007, in which Evanston again offered to settle the complaint against Ghillie in the amount of $1 million.

We are informed that plaintiffs decline to accept Evanston's settlement offer in the amount of the policy's Each Occurrence Limit. Thus, plaintiffs seek damages against Ghillie in amounts in excess of the Limits of Insurance available under Policy No. CL 041400001. It is the position of Evanston that it is not responsible for the amount of any judgment or settlement in excess of the policy's Each Occurrence Limit of $1 million. As explained below, Evanston reserves its rights under Policy No. CL 041400001, including its right to limit coverage pursuant to the policy provisions relating to Limits of Insurance. We urge Ghillie to immediately notify any other insurance carrier who issued insurance that applies, or that may apply, to the claims in the Ehart lawsuit.

## FACTUAL BACKGROUND

In order to explain the coverage issues, we must discuss the allegations in the complaint. Evanston understands that these allegations are unproven and may be untrue, incomplete, or embellished. In discussing the allegations, Evanston has not and does not conclude that any such allegations are true, and no statement in this letter should be construed otherwise.

On October 18, 2006, plaintiffs Jeremy Ehart, Kristy Ehart, and Steven McClanahan filed a lawsuit against you, Ghillie, and others (New York Fire-Shield, Inc., Wackenhut Services, Inc., and the Wackenhut Corporation) in the United States District Court for the Northern District of California, Case No. C06-06507. The complaint alleges that Jeremy Ehart and Steven McClanahan, both United States Marines, were severely burned on October 28, 2004 while participating in a military exercise in Jolon, California. They had each been wearing "ghillie suits" purchased from Ghillie by the U.S. Department of Defense which provided the suits to plaintiffs and other Marines for the exercise. Ehart's ghillie suit apparently ignited while he was firing an M60 machine gun during the exercise. McClanahan came to Ehart's aid and attempted to extinguish the fire. As a result, McClanahan's suit also ignited. Ehart and McClanahan sue Ghillie for

Mr. Todd Muirhead
January 3, 2008
Page 3

strict products liability, including design and manufacturing defects and failure to
warn, as well as for negligence and seek to recover general damages, medical and
incidental expenses, loss of earnings and earning capacity, interest, and costs. In
addition, Plaintiff Kristy Ehart alleges a separate claim for loss of consortium aris-
ing from the injury to her husband.

## POLICY INFORMATION

### 1.   The Policies

Evanston issued a commercial general liability policy, No. CL 041400001,
to Ghillie for the period May 19, 2004 through May 19, 2005. Evanston issued a
second insurance policy, No. CL 041400008, effective May 19, 2005 to May 19,
2006. Evanston renewed the second policy as No. CL 041400008RC1, effective
May 19, 2006 to May 19, 2007. Liability coverage under each policy is afforded
by a Commercial General Liability Occurrence Form, Form No. CG 00 01
(07/98), hereinafter "CGL form."

### 2.   Coverage A – Bodily Injury and Property Damage

Please refer to the CGL form, specifically the Insuring Agreement under
Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liabil-
ity, which provides in pertinent part as follows:

### SECTION I – COVERAGES

### COVERAGE A.  BODILY INJURY AND PROPERTY DAM-
AGE LIABILITY

### 1.  Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to
pay as damages because of "bodily injury" or "property damage" to
which this insurance applies. We will have the right and duty to de-
fend the insured against any "suit" seeking those damages. How-
ever, we will have no duty to defend the insured against any "suit"
seeking damages for "bodily injury" or "property damage" to which
this insurance does not apply. We may, at our discretion, investigate
any "occurrence" and settle any claim or "suit" that may result. ...

b. This insurance applies to "bodily injury" and "property damage"
only if:

Mr. Todd Muirhead
January 3, 2008
Page 4

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)  The "bodily injury" or "property damage" occurs during the policy period.

\* \* \*

Please refer to the CGL form, specifically Section V – Definitions, which defines the following policy terms:

**SECTION V – DEFINITIONS**

...

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

...

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

As you will note, the liability insurance under Coverage A applies only to "bodily injury" sustained during the policy period as a result of an "occurrence." Plaintiffs sustained injuries on October 28, 2004, and therefore those injuries occurred during the effective dates of Policy No. CL 041400001. The injuries sustained by plaintiffs did not occur during the effective dates of the subsequent policies, Nos. CL 041400008 and CL 041400008RC1, and therefore, those two policies do not potentially apply to the claims in the complaint. Accordingly, Evanston must respectfully decline to defend or indemnify Ghillie under those two subsequent policies with respect to the bodily injury claims.

3.  **Coverage B – Personal and Advertising Injury**

It is the position of Evanston that Coverage B does not apply to the claims in the complaint or the cross-claim. Please refer to the enclosed letter dated April 24, 2007. That letter, which relates to the cross-claim by New York Fire-Shield, Inc., sets forth the pertinent provisions of the Insuring Agreement for Coverage B. The claims by plaintiffs do not meet the definition of "personal and advertising injury" and, therefore, do not fall within the scope of Coverage B as to any of the policies issued by Evanston to Ghillie. Accordingly, Evanston must respectfully decline to defend or indemnify Ghillie under Coverage B with respect to the claims in the cross-claim.

Mr. Todd Muirhead
January 3, 2008
Page 5

4.   **Limits of Insurance**

The liability declarations of Policy No. CL 041400001 schedule the policy's Limits of Insurance as follows:

**LIMITS OF INSURANCE**

| | |
|---|---|
| General Aggregate Limit (Other Than Products /Completed Operations) | $2,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Fire Damage Limit | $50,000 |
| Medical Expenses | $1,000 |

\* \* \*

Please refer to the CGL form, specifically Section III – Limits of Insurance, which provides as follows:

**SECTION III – LIMITS**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

...

Mr. Todd Muirhead
January 3, 2008
Page 6

5.  Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limits is the most we will pay for the sum of:

   a.  Damages under Coverage **A**; and

   b.  Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

   ...

7.  Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for the sum of all medical expenses damages because of "bodily injury" sustained by any one person.

* * *

As reflected above, the Limits of Insurance in the declarations apply regardless of the number persons making claims or bringing "suits." The General Aggregate Limit and Products-Completed Operations Aggregate Limit, whichever applies, are subject to the Each Occurrence Limit. The claims in the complaint fall within the "products-completed operations hazard," and therefore are subject to the rules pertaining to the Products-Completed Operations Aggregate Limit. Please refer to the CGL form, specifically, Section V – Definitions, which sets forth the following definition:

16.     "Products-completed operations hazard":

   a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1)  Products that are still in your physical possession[.]...

* * *

The Each Occurrence Limit provides that $1 million is the most that Evanston will pay for damages under Coverage A and medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence." The term "occurrence is defined at Paragraph 13. of the CGL form to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Mr. Todd Muirhead
January 3, 2008
Page 7

In determining policy limits, occurrence means the underlying cause of the injury, rather than the injury or claim itself.[1] When there is a single cause of multiple injuries, courts look to the cause rather than the injuries in determining the amount of insurance coverage.[2] "In such a case, the result is a finding of only one claim, i.e., the court looks to the single cause rather than to the multiple injuries."[3] In applying the cause test, courts in California consistently hold that "a series of related acts, attributable to a single cause, may be treated as having been caused by one occurrence."[4]

The subject incident and claims by Ehart and McClanahan fall squarely within this framework. It is therefore necessary to advise you that Evanston will not be responsible for any damages awarded against Ghillie or for any amounts paid in settlement, to the extent any such damage award or settlement amount exceeds the Each Occurrence Limit of $1 million. We urge you to immediately notify any other insurance carrier whose insurance may cover some or all of the damages alleged in the complaint or cross-claim.

5.    **Punitive Damages**

Policy No. CL 041400001 is subject to the Combination General Endorsement, Form M/E-001(04/00), which states in pertinent part as follows:

---

[1] *Whittaker Corp. v. Allianz Underwriters, Inc.* (1992) 11 Cal.App.4th 1236, 1242; *accord Safeco Ins. Co. of America v. Fireman's Fund Ins. Co.* (2007) 148 Cal.App.4th 620, 633.

[2] *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 863.

[3] *Id.*

[4] *EOTT Energy Corp. v. Storebrand Internat. Ins. Co.* (1996) 45 Cal.App.4th 565, 576; *see also Haerens v. Commercial Cas. Ins. Co.* (1955) 130 Cal.App.2d Supp. 892, 893-894 (279 P.2d 211); *State Farm Fire & Casualty Co. v. Elizabeth N.* (1992) 9 Cal.App.4th 1232, 1237-1238; *Chemstar, Inc. v. Liberty Mut. Ins. Co.* (9th Cir. 1994) 41 F.3d 429, 433 (twenty-eight incidents of pitting involving twenty-eight different homes and multiple claimants, but caused by the failure of a lime plaster manufacturer to warn of limited application requirement, thus triggering only one deductible); *Mead Reinsurance v. Granite State Ins. Co.* (9th Cir. 1988) 873 F.2d 1185, 1188.

Mr. Todd Muirhead
January 3, 2008
Page 8

_____

6.   Punitive or Exemplary Damages is not covered under this policy nor
are any expenses nor any obligation to share damages with or repay
anyone else who must pay damages from same. ...

* * *

Evanston specifically reserves its rights under the above-quoted policy ex-
clusion relating to punitive and exemplary damages.

_____

## CONCLUSION

_____

In addition to the specific reservation of rights set forth in this letter, any
duties owed by Evanston to the insured are subject, but not limited, to the follow-
ing additional reservations:

1.   The Evanston policies do not provide coverage for equitable claims,
such as claims for injunctive relief. In California, "damages" are limited to com-
pensation for harm suffered and do not include injunctive relief and other equita-
ble relief. *Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254.

2.   Evanston reserves the right not to indemnify the insured for pure eco-
nomic loss, as such damages are not covered by the Evanston policies.

3.   Evanston specifically reserves the right to seek reimbursement of de-
fense fees paid toward defending causes of action which raise no potential for
coverage, as authorized by California law, including the California Supreme
Court's decisions in *Buss v. Superior Court (Transamerica Ins. Co.)* (1997) 16
Cal.4th 35 and *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal. 4th 643.

4.   Evanston reserves the right to seek reimbursement for any judgment or
settlement of non-covered claims paid pursuant to the reservations stated herein as
authorized in *Blue Ridge Insurance Company v. Jacobsen*, (2001) 25 Cal.4th 489.

5.   All rights and reservations previously asserted are incorporated in full
herein, including, but not limited to, the right file an action in the civil courts for
reimbursement of defense and indemnity payments.

In summary, Evanston agrees to continue to providing a defense in the
above-captioned lawsuit under Policy No. CL 04140001, subject to a reservation

Mr. Todd Muirhead
January 3, 2008
Page 9

of rights. The entitlement of Ghillie and you to the defense benefit under the policy is limited to covered attorney fees, expert fees, and other reasonable litigation expenses incurred in connection with the defense of Ghillie and you on or after the date of Evanston's first notice of a lawsuit seeking potentially covered damages.

If you or Ghillie have coverage that exceeds the limits of the Evanston policy, your insurance broker should report the claim. If you or Ghillie have coverage with another company, please provide us with the name of the company, its address, contact person, policy period, and claim number. If you or your broker have notified another carrier, and that carrier has acknowledged or disclaimed coverage, please provide us with any correspondence with that insurer so that we can evaluate its position regarding coverage.

Please note that Evanston's coverage position is based upon the allegations in the lawsuits and the facts and information presented to Evanston to date and should not be be construed as applicable to subsequently amended suits or amendments to this claim. If you disagree in any way with the position taken in this letter, or if you believe there are any facts, legal authorities, documents, witnesses, evidence, policy provisions, or other matter of any kind or nature that would warrant a different conclusion, Evanston would like to consider that additional information at your earliest possible convenience. Further, we request that you provide us with copies of any amended pleadings that may be filed, so that we may continue to review this matter for coverage.

Evanston, by this letter and all prior correspondence, does not waive or invalidate any of the other terms, conditions or exclusions in the policies. Evanston specifically reserves the right to exercise any of the other terms, conditions or exclusions of the policies which now exist or may later become apparent. Evanston also reserves the right to rely upon any facts that are presently known or that may become apparent at any time after this letter. Evanston specifically reserves the right to bring an action to declare the obligations and responsibilities of the parties hereto under the contract of insurance in question, at any time after the date of this letter.

California law requires that we provide the following information to you:

You may have this claim reviewed by the California Department of Insurance to the extent you disagree with any or all of the positions Evanston Insurance Company has expressed. Your inquiry may be directed to the California Department of Insurance, Claims Services

Mr. Todd Muirhead
January 3, 2008
Page 10

Bureau, 11th Floor, 300 South Spring Street, Los Angeles, CA 90013; or you may call 800-927-4357 or 213-897-8921.

\* \* \*

You are not required to contact the California Department of Insurance, and you are welcomed to contact the undersigned should you have any comments or questions about this letter. Thank you.

Sincerely,

Jeffrey S. Bolender
E. Susie Wendorff

JSB:is
Enclosures

Copies to:    Mr. Paul Stephan
SELMAN BREITMAN
33 New Montgomery, 6th Fl.
San Francisco, CA 94105-4537

Mr. Roger DeKraker
EVANSTON INSURANCE COMPANY
8700 East Northsight Blvd., Ste.200
Scottsdale, AZ 85260-3669

**EXHIBIT 1**

**EXHIBIT 1**

**EXHIBIT 1**

**EXHIBIT 1**

# BOLENDER & ASSOCIATES

A PROFESSIONAL LAW CORPORATION

2601 AIRPORT DRIVE, SUITE 360
TORRANCE, CALIFORNIA 90505

JEFFREY S. BOLENDER†
PATRICK L. BLAIR†
ANITA V. SHAH
LAUREN M. CHUN

TELEPHONE 310 784 2443
FACSIMILE 310 784 2444

†ADMITTED IN CALIFORNIA AND HAWAII

OF COUNSEL
MIKEL A. GLAVINOVICH

April 24, 2007

GHILLIE SUITS.COM, INC.
1743 Rhonda Lane
Stone Mountain, GA 30087

*Sent Via Certified Mail*

Attn: Todd Muirhead

Re: ***Ehart, et al. v. Ghillie Suits.com, Inc., et al.***
    Case No.    : C06-06507
    Claim No.    : 00126843
    Policyholder : Ghillie Suits.com, Inc.
    Policy Nos.  : CL 041400001 (05/19/2004 – 05/19/2005)
              : CL 041400008 (05/19/2005 – 05/19/2007)
    Our File No. : 07-80185

Dear Mr. Muirhead:

Our office has been retained as insurance coverage counsel by Markel Southwest Underwriters, Inc., an affiliated underwriter manager for Evanston Insurance Company ("Evanston"), the general liability carrier for Ghillie Suits.com, Inc. On behalf of Evanston, we hereby acknowledge receipt of a cross-claim filed in the pending lawsuit entitled, Ehart, et al. v. Ghillie Suits.com, Inc., et al., Case No. C06-06507, filed in the United States District Court, Northern District of California ("the Ehart lawsuit"). We understand that you (Todd Muirhead) are the owner of Ghillie Suits.com, Inc. ("Ghillie"). Please let us know if there is anyone else to whom we should direct this letter.

As you already know, Evanston has already retained Paul Stephan, Esq. of the law firm Selman Breitman, to provide a legal defense to you and Ghillie in the Ehart lawsuit. Mr. Stephan will continue to defend to Ghillie in the Ehart lawsuit. This letter pertains solely to the cross-claim recently filed against you, Ghillie, and others by another defendant, New York Fire-Shield Inc. ("Fire-Shield"). As explained below, the trademark related allegations in the cross-claim are not within the scope of coverage under the Evanston policies. Evanston will provide a legal defense to those allegations in the cross-claim, but its defense of the cross-claim

Mr. Todd Muirhead
April 24, 2007
Page 2

---

will be under a reservation of rights, including the right to seek reimbursement for attorney fees and litigation expenses incurred solely to defend the allegations in the cross-claim for which no potential coverage exists.

In order to explain the coverage issues, we must discuss the allegations in the complaint and cross-claim. Evanston understands that these allegations are unproven and may be untrue, incomplete, or embellished. In discussing the allegations, Evanston has not and does not conclude that any such allegations are true, and no statement in this letter should be construed otherwise.

As you know, on October 18, 2006, various plaintiffs (Jeremy Ehart, Kristy Ehart, and Steven McClanahan) filed a lawsuit against you, Ghillie, and others (New York Fire-Shield, Inc., Wackenhut Services, Inc., and the Wackenhut Corporation) in the United States District Court for the Northern District of California, case. No. C06-06507. As against you and Ghillie, plaintiffs allege causes of action for strict products liability for the defective design of fire retardant suits and the failure to warn consumers of the defects. Plaintiffs frame their allegations under other theories of liability as well, seeking to recover general damages, medical and incidental expenses, loss of earnings and earning capacity, interest, and costs.

On March 23, 2007, Fire-Shield filed a cross-claim alleging causes of action for trademark infringement; unfair competition; misleading advertising; equitable indemnity; total indemnity; contribution; and declaratory relief. The gist of the cross-claim is a dispute concerning the marketing, advertising, and distribution of fire retardant products under names similar to Fire-Shield's trademark "Inspecta-Shield." Specifically, Fire-Shield alleges that Ghillie infringed on the "Inspecta-Shield" trademark by marketing and distributing fire retardant products under the name "Inspecta-Shield Class A Fire Retardant." The allegedly misleading marketing and advertising caused consumer confusion. Fire-Shield seeks injunctive and declaratory relief, indemnification, and contribution. It also seeks compensatory damages, costs, attorney fees, and punitive damages.

Evanston issued a commercial general liability policy, No. CL 041400001 to Ghillie for the period May 19, 2004 through May 19, 2005. Evanston issued a second insurance policy, No. CL 041400008, effective May 19, 2005 to May 19, 2006. Evanston renewed the second policy as No. CL 041400008RC1, effective May 19, 2006 to May 19, 2007. Each policy's limits of insurance are $1 million per occurrence subject to general aggregate of $2 million. Liability coverage is afforded by Form CG 00 01 (07/98) ("CGL form").

Please refer to the CGL form, specifically the insuring agreement under Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, which provides in pertinent part as follows:

Mr. Todd Muirhead
April 24, 2007
Page 3

## SECTION I – COVERAGES

## COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ...

b.  This insurance applies to "bodily injury" and "property damage" only if:

    (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2)  The "bodily injury" or "property damage" occurs during the policy period.

\* \* \*

Please refer to the CGL form, specifically Section V – Definitions, which defines the following policy terms:

## SECTION V - DEFINITIONS

...

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

...

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

...

17.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

Mr. Todd Muirhead
April 24, 2007
Page 4

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

As you will note, the liability insurance under Coverage A applies only to "bodily injury" and "property damage" sustained during the policy period as a result of an "occurrence." The trademark related allegations in the cross-claim do not constitute an "occurrence," "property damage," or "bodily injury." Therefore, it is the position of Evanston that those allegations are not within the insuring agreement of Coverage A of either Evanston policy.

Please refer to the CGL form, specifically the Insuring Agreement under Section I – Coverages, Coverage B – Personal and Advertising Injury Liability, which provides in pertinent part as follows:

## SECTION I – COVERAGES

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. ...

    ...

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

Please refer to the CGL form, Section V – Definitions, where the following terms are defined:

## SECTION V - DEFINITIONS

    **1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

Mr. Todd Muirhead
April 24, 2007
Page 5

...

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

...

**f.**    The use of another's advertising idea in your "advertisement"; or

**g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

As you will note, the Insuring Agreement for Coverage B applies only to "personal and advertising injury" offenses committed during the policy period. "Personal and advertising injury" is defined to include the "use of another's advertising idea in your 'advertisement'[.]" Fire-Shield alleges that Ghillie infringed upon its trademark, "Inspecta-Shield," by marketing and advertising its product under the similar product name of "Inspecta-Shield Class A Fire Retardant." Please note, however, that each of the Evanston policies is subject to an Intellectual Property Hazard Exclusion Endorsement, Form IntellProp (09.01), which states in pertinent part:

The following exclusion is added to **SECTION I – COVERAGES, 2. Exclusions under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILTY** and/or **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

We have no duty or obligation to indemnify, investigate, settle, or defend any claim, "suit" or administrative proceeding, under any circumstances, against any insured alleging actual or threatened injury or damage of any nature or kind to any persons or property, which arises out of such "intellectual property hazard" either through primary or secondary markets, or through any stage of the stream of commerce.

The following is added to **SECTION V – DEFINITIONS:**

**"Intellectual property hazard"** means any claim, under any circumstance, which in any way relates to or arises out of:

a.    Infringement of patent, trademark, service mark, trade dress, copyright, title or slogan, or copyright joint ownership;

b.    disparagement of a person's or organization's goods, products, services or claims;

c.    unfair competition;

Mr. Todd Muirhead
April 24, 2007
Page 6

    d.  trade libel or slander;

    e.  violation of the right of privacy or publicity, advertising ideas, style of doing business, intellectual property, trade secrets, market share agreements;

    f.  violations of or claims relating to the Lanham Act; and/or

    g.  violations of or claims relating to the Computer Fraud Act.

This exclusion is also intended to exclude any agreements or contracts of any kind that the insured may have with third parties requiring defense and/or indemnity. To the extent not excluded, breach of non-disclosure, non-compete or non-solicitation agreements are not covered.

* * *

    The above-quoted provisions exclude coverage for claims arising out of, or in any way are related to the infringement of patent, trademark, service mark, trade dress, copyright, title or slogan, or copyright joint ownership. Fire-Shield's claims arise out of allegations that Ghillie infringed on the trademark, "Inspecta-Shield" by unlawfully marketing, advertising and distributing fire retardant under the similar name, "Inspecta-Shield Class A Fire Retardant." Accordingly, Fire-Shield's allegations in the cross-claim regarding trademark infringement, misleading advertising, and unfair competition fall within the scope of the Intellectual Property Hazard Exclusion Endorsement and are excluded from coverage. Therefore, it is the position of Evanston that these allegations do not fall within the scope of coverage under Coverage B of either Evanston policy.

    Additionally, please note that liability policies, such as the Evanston policies, do not provide coverage for claims seeking injunctive or restitutionary relief. Further, each of Evanston's polices exclude coverage for punitive and exemplary damages, which are sought by Fire-Shield. With respect to policy No. CL 041400001, please refer to Form M/E-001(04/00), which states as follows:

    6.  Punitive or Exemplary Damages is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same. ...

* * *

With respect to policy Nos. CL 041400008 and CL 041400008RC1, please refer to Form MSU 001 (06/04), which states as follows:

    6.  Fines, penalties, and/or punitive or exemplary damages are not covered under this policy nor are any expenses nor is any obligation to share such damages or repay another. ...

Mr. Todd Muirhead
April 24, 2007
Page 7

* * *

As noted above, Evanston is already defending you (Muirhead) and Ghillie in connection with the Ehart lawsuit. Evanston also agrees to defend you and Ghillie with respect to the cross-claim; however, its agreement to furnish a legal defense to the cross-claim is subject to a reservation of rights. This means that, although Evanston will be providing a legal defense, it hereby reserves the right to deny the policy's indemnity benefit as to any liability on the part of you or Ghillie with respect to New York Fire Shield's trademark related allegations. Further, Evanston reserves its right to seek reimbursement pursuant to *Buss v. Superior Court* (1997) 16 Cal.4th 35, 39. Specifically, Evanston reserves its right to seek recovery of attorney fees and litigation expenses to the extent those fees and expenses are incurred in connection with the defense of claims for which no potential coverage exists. Evanston also reserves the right to claim and demand reimbursement from you and Ghillie of such fees and expenses, and to file an action in the civil courts for an order and award of monetary damages in the amount of Evanston's expenditures plus interest.

In summary, Evanston hereby agrees to furnish a defense to the cross-claim, as set forth herein, subject to the reservation. Evanston also reserves its right to seek judicial declarations regarding the respective rights and obligations of all interested parties under the policy. Evanston reserves the right to recover from any insured, and/or any other insurer, or any other parties, any payments made by Evanston, including payments for indemnification, defense costs and expenses, attorney fees and costs of suit, and to seek reimbursement of any payments for indemnification, as well as attorney fees and other litigation costs paid to defend claims for which there is no potential coverage. Evanston reserves the right to withdraw from the defense of Fire-Shield's cross-claim should facts show there is no potential coverage under the insurance afforded by Evanston, or if a court determines there is no duty to defend.

If you are aware of other insurance that applies, or that may apply, please notify the insurers at your earliest convenience. If any other insurer has been notified, but either failed to respond or refused to defend, or if any other insurer has agreed to defend, please forward to my attention any and all policy documents, insurer-related correspondence, etc., so that I may communicate directly with them. If this letter requires clarification in any way, kindly contact me at your earliest convenience so that we can discuss these issues more fully. Rest assured, I will immediately evaluate any such information and provide a detailed written response.

In Evanston's defense, investigation, and handling of this matter, it may describe certain issues and policy provisions that may affect your entitlement to cov-

Mr. Todd Muirhead
April 24, 2007
Page 8

erage. Nothing in this letter, prior correspondence, or any other action by Evanston shall constitute a waiver of any kind as to any legal or contractual rights it may ever have. Evanston reserves the right to rely on any facts, which are now known, or which are later discovered, that may relate to any issue concerning the availability of insurance coverage. Evanston specifically reserves the right to bring an action to declare the obligations and responsibilities of the parties hereto under the contract of insurance in question, at any time after the date of this letter. California law requires that we provide the following information:

You may have this claim reviewed by the California Department of Insurance to the extent you disagree with any or all of the positions Evanston Insurance Company has expressed. Your inquiry may be directed to the California Department of Insurance, Claims Services Bureau, 11th Floor, 300 South Spring Street, Los Angeles, CA 90013; or you may call 800-927-4357 or 213-897-8921.

You are not required to contact the California Department of Insurance, and you are welcomed to contact the undersigned should you have any comments or questions about this letter. Thank you.

Sincerely,

Jeffrey S. Bolender

JSB:is

Copies to:    Mr. Paul Stephan
SELMAN BREITMAN
33 New Montgomery, 6th Fl.
San Francisco, CA 94105-4537

Mr. Roger DeKraker
MARKEL SOUTHWEST UNDERWRITERS, INC.
8700 East Northsight Blvd., Ste.200
Scottsdale, AZ 85260-3669

**EXHIBIT 2**

**EXHIBIT 2**

**EXHIBIT 2**

**EXHIBIT 2**

# BOLENDER & ASSOCIATES
### A PROFESSIONAL LAW CORPORATION

JEFFREY S. BOLENDER†
LAUREN M. CHUN
E. SUSIE WENDORFF

— OF COUNSEL—
MIKEL A. GLAVINOVICH
TALI MONROF

2601 AIRPORT DRIVE, SUITE 360
TORRANCE, CALIFORNIA 90505

TELEPHONE 310 784 2443
FACSIMILE 310 784 2444

†ADMITTED IN CALIFORNIA AND HAWAII

October 11, 2007

**WILLOUGHBY, STUART & BENING**
**A PROFESSIONAL LAW COPROPRATON**
50 West San Fernando, Suite 400
San Jose, CA 95113

*Via Facsimile & U.S. Mail*

Attn: Alexander F. Stuart, Esq.

Re: ***Ehart, et al. vs. Ghillie Suits.com, et al.***
    Case No.    : C06-06507
    Claim No.    : 00126843
    Policyholder : GhillieSuits.com, Inc.
    Policy Nos.  : CL 041400001 (05/19/2004 – 05/19/2005)
              : CL 041400008 (05/19/2005 – 05/19/2007)
    Our File No. : 07-80185
    Your File No.: 1160.10643S

Dear Mr. Stuart:

    As you may know, our office has been retained as insurance coverage counsel by Markel Southwest Underwriters, Inc., an affiliated underwriter manager for Evanston Insurance Company ("Evanston"), the general liability carrier for Ghillie Suits.com, Inc. On behalf of Evanston, we hereby respond to plaintiffs' settlement demand of September 26, 2007 in the above-captioned lawsuit.

    According to your letter of that date, plaintiffs contend that the injuries to each of them constitute separate "occurrences" under the Evanston policy and, therefore, they demand $2 million as the policy limits for settlement of this matter. As discussed further below, Evanston respectfully disagrees with plaintiffs' interpretation of the policy and applicable case law and renews its tender of the $1 million single occurrence policy limit for full and complete settlement of all claims. In making this offer, Evanston does not in any way seek to diminish the seriousness of plaintiffs' injuries nor the suffering and loss they have experienced and will continue to experience. To the contrary, Evanston seeks to provide plaintiffs with the fullest extent of benefits available to them under the policy and the law.

Mr. Alexander F. Stuart, Esq.
October 11, 2007
Page 2

As you are aware, the subject policy specifically defines the term "occurrence" as follows: "[A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions." Where there is a question as to whether a claim constitutes one occurrence or multiple occurrences, California law, recently affirmed in Safeco Ins. Co. of America v. Fireman's Fund Ins. Co. (2007) 148 Cal.App.4th 620, holds that the answer turns on the underlying cause of the injury or claim, not the number or extent of injuries.

In Safeco, the underlying action involved the negligence of one property owner which caused a landslide and resulted in damage to his downhill neighbor. At issue before the Court of Appeal was whether Fireman's Fund was liable for multiple policy limits arising from multiple occurrences, or a single policy limit for only one occurrence. Safeco argued for the former construction, contending that property damage occurred during each of the four Fireman's Fund policy periods. However, the court held that there was only one occurrence, a landslide, in the first policy period. "[T]he definitions of 'occurrence' determined if a particular policy provided coverage, not the amount of coverage. Put another way, in determining which policies provided coverage, the definitions of 'occurrence' meant that property damage claims triggered policies in effect at the time of the damage. . . ." (Citations omitted.) Id. at 633.

The Court then continued its analysis as to the amount of coverage. "Fireman's Fund's liability under the policies is determined on a 'per occurrence' basis. In determining policy limits, 'occurrence has generally been held to mean the underlying cause of the injury, rather than the injury or claim itself; otherwise, the insurer's effort to limit its liability per occurrence would be substantially weakened.'" Id. at 633, quoting Whittaker Corp. v. Allianz Underwriters, Inc. (1992) 11 Cal.App.4th 1236, 1242; EOTT Energy Corp. v. Storebrand Internat. Ins. Co. (1996) 45 Cal.App.4th 565, 575-578. "'When there is a single cause of multiple injuries . . . , courts often look to the cause rather than the injuries in determining the amount of insurance coverage. In such a case, the result is a finding of only one claim; i.e. the court looks to the single cause rather than to the multiple injuries.'" Safeco Ins. Co. of America v. Fireman's Fund Ins. Co., supra, 148 Cal.App.4th at 633, quoting Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co. (1993) 5 Cal.4th 854, 863.

The Farmer's Fund policy defined "occurrence" as an "accident, including continuous . . . exposure to the same harmful conditions, . . . ." The Court noted the significance of the term "accident": "[T]his was done in order to clarify the intent with respect to the time of coverage and application of policy limits, particularly in situations involving a related series of events attributable to the same fac-

Mr. Alexander F. Stuart, Esq.
October 11, 2007
Page 3

———————————————————————

*tors.* Under such circumstances only *one accident or occurrence* is intended as far as the application of *policy limits* is concerned.'" Id. at 635, quoting <u>Montrose</u> <u>Chemical Corp. v. Admiral Ins.Co.</u> (1995) 10 Cal. 4th 645, 672.

In <u>Caldo Oil Co. v. State Water Resources Control Bd.</u>, (1996) 44 Cal.App.4th 1821, plaintiff appealed a State Water Resources Control Board decision to treat two claims for tank leaks as one occurrence and thus limit plaintiff's maximum reimbursement. The leaks occurred in two separate tank systems on adjacent parcels of land, the first discovered in April and the second in December. Two separate claims were submitted by plaintiff. The Water Board reasoned that the two events could be considered only one occurrence because "[a]butting parcels were involved. These parcels are owned by the same company which used both parcels in combined business activities. The releases on both parcels involve petroleum products. The releases were discovered within a time frame which permitted a single site investigation." Id. at 1826. Plaintiff argued that the leaks occurred at two separate sites from two different tank systems of two different petroleum fuels, and that the insurance industry definition of "occurrence" should be used. Id. The court agreed with plaintiff and applied the typical commercial general liability policy definition of "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 1828.

> When all injuries emanate from a common source . . . , there is only a single occurrence *for purposes of policy coverage*. It is irrelevant that there are multiple injuries or injuries of different magnitudes, or that the injuries extend over a period of time. Conversely, when a cause is interrupted, or when there are several autonomous causes, there are multiple "occurrences" for purposes of determining policy limits and assessing deductibles. Id., quoting 3 Cal. Insurance Law & Practice (1995) General Liability Policies, §49.18[3][b], pp. 49:54-55 (emphasis added); see also <u>Safeco Ins. Co. of</u> <u>America v. Fireman's Fund Ins. Co.</u> supra, 148 Cal.App.4th at 633-634.

Thus, in <u>Caldo Oil</u>, the court found two separate conditions or causes for the underground water contamination.

In <u>Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.</u>, supra, 5 Cal.4th 854, plaintiff argued that two omissions by its attorney in connection with a collection matter constituted two claims under the attorney's "claims made" policy. In support of this contention, plaintiff relied on several cases concerning "occurrence" policies which inapplicability the court discussed at length. In <u>Michigan</u> <u>Chemical Corp. v. American Home Assur. Co.</u> (W.D.Mich. 1983) 728 F.2d 374, the court held that the mistaken shipment of toxic flame retardant to distributors of livestock feed resulting in the death of thousands of head of livestock and claims

Mr. Alexander F. Stuart, Esq.
October 11, 2007
Page 4

by numerous farmers, constituted a single occurrence. The court reasoned that "[t]he number of occurrences must be determined by explaining the cause of the property damage, i.e. the misshipment or misshipments of the toxin." Id. at 382. "Occurrence" was defined in that policy as "an accident or a happening or event or a continuous or repeated exposure to conditions . . ."Id. at 378. Similarly, in Home Indem. Co. v. City of Mobile (11th Cir. 1984) 749 F.2d 659, more than 200 claims were filed against the city for flood damage incurred during three rainstorms. Plaintiffs alleged that the city had been negligent in its planning, construction, and operation of its water drainage system, and that each claim was an occurrence. The insurer contended that each storm was a separate cause of damage and, thus, a separate occurrence. The court held that the number of causes was determinative and that each discrete act or series of acts causing damage was a separate occurrence under the policy. Thus, each rainstorm constituted an occurrence. In that case, the policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, . . . ." Id. at 661. The California Supreme Court noted with agreement the Michigan Chemical court's explanation that use of the term "occurrence" rather than "on a claim basis" indicates that "such policies were not intended to gauge coverage on the basis of individual accidents giving rise to claims, but rather on the underlying circumstances which resulted in the claims for damages", quoting Champion International Corp. v. Continental Casualty Co. (2d Cir. 1976) 546 F. 2d 502, 505-506 (emphasis added), Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co., supra, 5 Cal.4th at 866. In Champion, plaintiff sold vinyl coated plywood panels installed in houseboats, house trailers, campers, and the like. Fourteen hundred vehicles were damaged when the vinyl peeled off after installation. The court held that there was only one occurrence.

    Plaintiffs cite the decision in The Flintkote Co. v. General Accident Assurance Co. (N.D.Cal. 2006) 410 F. Supp.2d 875 for its holding that "occurrence" means "an event that causes and immediately precedes an injury giving rise to liability under the policy." While Evanston would contend that the fire and resulting injuries to plaintiffs meet this definition, the case is otherwise distinguishable from the instant action. At the outset, this case concerns asbestos-related injuries and thus falls within that unique and specific area of law. More specifically, however, the subject policy did not include a definition of "occurrence", unlike the Evanston policy. The court considered a dictionary definition of the term and engaged in a lengthy and detailed analysis of each policy provision using the term, of which there were several, again unlike the Evanston policy. The court concluded that "[a]ll of the preceding passage use 'occurrence' in the sense of 'accident': an unforeseen event that causes injury to one or more persons, or to property. In contrast, both of defendants' proposed constructions for 'occurrence' . . . are better characterized as business decisions or operations facts of plaintiff's business." Id. at 892. The court further noted that, unlike the Evanston policy, there was no pro-

Mr. Alexander F. Stuart, Esq.
October 11, 2007
Page 5

_____

vision defining a condition existing for a prolonged period of time as a single oc-
currence. Id. The court in Maples v. Aetna Casualty & Surety Co. (1978) 83
Cal.App.3d 641, 648-649, cited by the Flintkote court, extensively reviewed cases
from California and a number of other states and held that the "seemingly unbro-
ken line of authority find[s] that the term 'accident' unambiguously refers to the
event causing damage, not the earlier event creating the potential for future injury.
. . ." Finally, the Flintkote court specifically limited its holding to the asbestos
arena: "The court is therefore in substantial agreement with plaintiff and finds
that, *as applied to the context of asbestos-related injuries*, an 'occurrence' is 'ex-
posure to asbestos that causes and immediately precedes an injury giving rise to
liability under the policy.'" The Flintkote Co. v. General Accident Assurance Co.,
supra, 410 F. Supp.2d at 894 (emphasis added).

An earlier decision by the Ninth Circuit Court of Appeals is more helpful in
this instance. In Chemstar, Inc. v. Liberty Mutual Ins. Co., et al. (9th Cir. 1994) 41
F.3d 429, plaintiff manufactured a plaster product which it recommended for exte-
rior use only. Various contractors were unaware of this and used the product for
home interiors, causing pitting in 28 homes the owners of which brought claims
against Chemstar. The Ninth Circuit upheld the Central District Court of Califor-
nia's ruling that the 28 claims constituted only one occurrence stemming from
Chemstar's failure to warn as there was no intervening business decision between
that failure and the pitting.

Similarly, in Mead Reinsurance v. Granite State Insurance Co. (9th Cir.
1988) 873 F.2d 1185, the Ninth Circuit upheld the Northern District Court of Cali-
fornia's ruling that 12 complaints against the city for police misconduct consti-
tuted only two occurrences. The Legislature requires that municipal liability be
based upon a municipal custom or policy. The Court held that the allegations in
eleven of the complaints constituted violation of one particular policy and the
twelfth complaint was directed at violation of another policy. The Mead court
cites to a decision in the Third Circuit, Appalachian Ins. Co. v. Liberty Mutual Ins.
Co. (1982) 767 F.2d 56. In that case, the court held that sex discrimination claims
by various employees at different times constituted one "occurrence". "The gen-
eral rule is that an occurrence is determined by the cause or causes of the resulting
injury. '[T]he majority of jurisdictions employs the 'cause theory'. Using this
analysis, the court asks if [t]here was but one proximate, uninterrupted, and con-
tinuing cause which resulted in all of the injuries and damage.'" (Multiple cita-
tions to various jurisdictions omitted.) Id. at 61. In that case, the cause was Lib-
erty Mutual's discriminatory employment policies.

Mr. Alexander F. Stuart, Esq.
October 11, 2007
Page 6

Plaintiffs also rely on <u>State Farm Fire & Casualty Co. v. Kohl, et al.</u> (1982) 131 Cal.App.3d 1031 and the fireman's rule cases cited in their demand letter to support their contention that their injuries were incurred in two separate occurrences. This reliance is misplaced. <u>Kohl</u> and the cases cited therein address circumstances wherein a defendant in an underlying action has both a homeowner's and an automobile policy and the issue in each case is whether, given the mutually exclusive provisions in the policies, there is potential coverage under one or both policies. There was no dispute as to whether the subject event constituted an "accident" or "occurrence", nor as to whether there was one or more "accidents" or "occurrences" under a given policy.[1] In reaching their decisions, the courts applied general tort principles to determine whether there was a separate and distinct tortious act which would survive the mutual policy exclusions; e.g. in an accident involving a vehicle in some fashion, is there another activity wholly independent of the vehicle which caused or contributed to the plaintiff's injury such that there is a potential for coverage under the homeowner's policy despite such policy's exclusion for injury arising out of the use and operation of a motor vehicle? These decisions are thus distinguishable from, and inapplicable to, the question at hand, namely determination of number of occurrences under a commercial general liability policy.

The fireman's rule cases are likewise clearly distinguishable and inapplicable. This rule, which is an example of the proper application of the doctrine of assumption of risk, a tort principle, operates to bar liability by waiving any otherwise applicable duty of care owed the firefighter. <u>Stapper v. GMI Holdings, Inc.</u> (1999) 73 Cal.App.4th 787. Thus, a firefighter is precluded from suing for injuries arising within the course of his or her employment. However, "[t]he firefighter does not assume every risk of his or her occupation. [Citation omitted.] The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer arrived on the scene." <u>Id.</u> at 791, quoting <u>Neighbarger v. Irwin Industries, Inc.</u> (1994) 8 Cal.4th 532, 538. The courts in these decisions were faced with determining whether there were any "independent acts of misconduct" which caused or contributed to the plaintiff's injuries separate and apart from the fire or other activity which summoned the plaintiff to the scene. Thus, the failure of a garage door opener which caused a firefighter to become trapped was deemed separate misconduct for which the fire-

---

[1] In their demand letter, plaintiffs include a quote from <u>Kohl</u> regarding the "causation theory." Significantly, the two cases cited in support of this portion of the decision do not apply California law and, moreover, were decided long before the California cases cited herein and reflecting current California law. Further, these cases are also limited to questions concerning coverage for automobile accidents.

Mr. Alexander F. Stuart, Esq.
October 11, 2007
Page 7

fighter could sue (Stapper v. GMI Holdings, Inc., supra, 73 Cal.App.4th 787), the creation of a slip hazard by washing down steps was also a potential cause of injury for a fire inspector independent of his inspection duties (Donohue v. San Francisco Housing Authority (1993) 16 Cal.App.4th 658), and even defective firefighter's safety equipment was not considered a risk inherent in the job and assumed by firefighters (Price v. Tempo, Inc., et al. (1985) 603 F. Supp. 1359). As with Kohl and the cases cited therein, the courts' analysis turns on the question of potential independent torts, not number of "occurrences" under a commercial general liability policy.

Returning to the facts of this case, and based on the foregoing authorities, it remains Evanston's position that the fire was the proximate cause of plaintiffs' injuries and, therefore, plaintiffs' two claims constitute only one occurrence under the policy. As the California Supreme Court has concurred, "occurrence" policies such as that issued by Evanston are not intended to gauge coverage on the basis of individual accidents giving rise to claims, but rather on the underlying circumstances giving rise to the claims for damages. In this case, those unfortunate circumstances, or "factors" as referred to in the Montrose decision, include both men wearing Ghillie Suits at the time of the incident, Mr Ehart's suit catching fire, and Mr. McClanahan attempting to smother the flames in the process of which the fire ignited his suit as well. Moreover, as reflected in the foregoing discussion, determination of an "occurrence" does not include evaluation of potential independent torts. The latter goes to a party's individual claim, which is separate and apart from the occurrence of which his or her claim may only be a part. Thus, your argument that Mr. McClanahan suffered additional injuries due to the fact he was wearing a Ghillie Suit would go to his causes of action and potential recovery of damages but does not constitute a separate occurrence under the law of California and the majority of jurisdictions in this country.

This response reflects Evanston's good faith effort and intent to fully and fairly evaluate plaintiffs' settlement demand in light of the policy and applicable law. If you have any information or legal authorities which you believe would change the above analysis, please let us know.

Sincerely,

Jeffrey S. Bolender
E. Susie Wendorff

JSB/ESW:is

Mr. Alexander F. Stuart, Esq.
October 11, 2007
Page 8

Copies to:     Mr. Paul E. Stephen, Esq.
               SELMAN BREITMAN, LLP
               33 New Montgomery, Sixth Floor
               San Francisco, CA 94105

               Mr. Roger Dekraker
               MARKEL SOUTHWEST UNDERWRITERS, INC.
               8700 E. Northsight Blvd., Suite 200
               Scottsdale, AZ 85258