1   Jeffrey S. Bolender (Bar No. 174423)
2   Thomas H. Schelly (Bar No. 217285)
    Bolender & Associates,
3   A Professional Law Corporation
    2601 Airport Drive, Suite 360
4   Torrance, CA 90505
    Telephone: (310) 784-2443
5   Facsimile: (310) 784-2444

6
    Attorney for Plaintiff,
7   EVANSTON INSURANCE COMPANY

8

9                  UNITED STATES DISTRICT COURT

10       NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

11

12  EVANSTON INSURANCE COMPANY,     Case No. C08 02099 HRL
    an Illinois corporation,
13                                  **REQUEST FOR JUDICIAL NOTICE**
                    Plaintiff,      **IN SUPPORT OF MOTION FOR**
14                                  **PARTIAL SUMMARY JUDGMENT**
    vs.
15                                  Date  : Sept. 19, 2008
16  GHILLIE SUITS.COM, INC., a      Time  : 9:00 a.m.
    Georgia corporation; TODD       Place : Courtroom 3
17  MUIRHEARD, a Georgia            Judge : Hon. Jeremy Fogel
    resident; JEREMY JAMES EHART,
18  a Kansas resident; KRISTY
    EHART, a Kansas resident; and   Complaint Filed : 4/22/2008
19  STEVEN RYAN McCLANAHAN, a       Trial Date: None Set
    West Virginia Resident, and
20  DOES 1 - 100,
21
                    Defendants.
22

23

24

25

26

27

28

BOLENDER & ASSOCIATES
A Professional Law Corporation
2601 Airport Dr., Suite 360
Torrance, CA 90505

                                                            1

TO ALL PARTIES AND THEIR ATTORNEYS:

Pursuant to *Federal Rules of Evidence* Rule 201, plaintiff Evanston Insurance Company respectfully requests that the Court take judicial notice of the following lawsuits and pleadings:

**Exhibit:**       **Description:**

1.       Defendants Jeremy James Ehart, Kristy Ehart, and Steven Ryan McClanahan's Complaint, titled <u>Jeremy James Ehart, Kristy Ehart and Steven Ryan McClanahan v. Ghillie Suits.com Inc., et al.</u>, United States District Court, Northern District of California, San Jose Division Case No. 06 06507 RS.

2.       Plaintiff Evanston Insurance Company's Complaint, titled <u>Evanston Insurance Company v. Ghillie Suits.Com, Inc. et al.</u>, United States District Court, Northern District of California, San Jose Division Case No. C08 02099 HRL.

                                        BOLENDER & ASSOCIATES,
                                        A Professional Law Corporation

Dated: August 12, 2008   By: _____
                                        Jeffrey S. Bolender
                                        Thomas H. Schelly,
                                        Attorney for Plaintiff,
                                        Evanston Insurance Company

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 3 of 85

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 14 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/18/2006    Page 1 of 23

10/18/06

1  CRAIG NEEDHAM (SBN 52010)
   KIRSTEN FISH (SB #217940)
2  NEEDHAM, DAVIS, KEPNER, & YOUNG, LLP
   1960 The Alameda, Suite 210
3  San Jose, CA 95126
   Tel:  (408) 244-2166
4  Fax:  (408) 244-7815

5  TINSMAN & SCIANO, INC.
   DANIEL J.T. SCIANO (Pending Admission *Pro Hac Vice*)
6  10107 McAllister Freeway
   San Antonio, Texas 78216
7  Telephone: (210) 225-3121
   Fax:  (210) 225-6235
8
   *Attorneys for Plaintiffs, JEREMY JAMES*
9  *EHART, KRISTY EHART, and STEVEN*
   *RYAN McCLANAHAN*
10

FILED

2006 OCT 18 P 2: 10

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Sm  #3
Fees Pd
SI

11
12                IN THE UNITED STATES DISTRICT COURT
13            FOR THE NORTHERN DISTRICT OF CALIFORNIA
              SAN JOSE DIVISION
14
15  JEREMY JAMES EHART, KRISTY          C 06  06507  RS
    EHART, and STEVEN RYAN
16  McCLANAHAN,
                                        **COMPLAINT FOR DAMAGES**
17            Plaintiffs,
                                        **DEMAND FOR JURY TRIAL**
18       vs.

    GHILLIE SUITS.COM INC.; TODD
19  MUIRHEAD; NEW YORK FIRE-SHIELD
    INCORPORATED; WACKENHUT
20  SERVICES, INCORPORATED; THE
    WACKENHUT CORPORATION; and
21  DOES 1 – 50, inclusive,

22            Defendants.

23

24       Plaintiffs, JEREMY JAMES EHART, KRISTY EHART, and STEVEN RYAN

25  McCLANAHAN (referred to collectively as "Plaintiffs") complain of Defendants, GHILLIE

26  SUITS.COM INC., D/B/A AND A/K/A GHILLIE SUITS.COM (referred to as "Ghillie

27  Suits.com"), TODD MUIRHEAD (referred to as "Muirhead"), NEW YORK FIRE-SHIELD

{H:\WDOCS\6183\71353\pleading\00086038.DOC}
COMPLAINT FOR DAMAGES                                                    -1-

**EXHIBIT  1**

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 4 of 85

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 15 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/18/2006    Page 2 of 23

1  INCORPORATED, D/B/A AND A/K/A N.Y. FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW

2  YORK FIRE-SHIELD, INC. (referred to as "New York Fire-Shield"), WACKENHUT SERVICES,

3  INCORPORATED AND/OR THE WACKENHUT CORPORATION (referred to as "Wackenhut"),

4  and DOES 1 – 50, (collectively referred to as "Defendants") as follows:

5  **GENERAL ALLEGATIONS**

6       1.    At all times mentioned herein, Plaintiff JEREMY JAMES EHART is an individual

7  citizen and resident of the County of Reno, State of Kansas.

8       2.    At all times mentioned herein, Plaintiff KRISTY EHART is an individual citizen and

9  resident of the County of Reno, State of Kansas.

10       3.    At all times mentioned herein, Plaintiff STEVEN RYAN McCLANAHAN is an

11  individual citizen and resident of the County of Summers, State of West Virginia.

12       4.    At all times mentioned herein, Defendant GHILLIE SUITS.COM INC., D/B/A AND

13  A/K/A GHILLIE SUITS.COM is a corporation duly organized and existing under the laws of the

14  State of Georgia, with its principle place of business in the State of Georgia.  At all times mentioned

15  herein, Defendant GHILLIE SUITS.COM INC., D/B/A AND A/K/A GHILLIE SUITS.COM

16  engaged in substantial, continuous and systematic activities in the State of California.  By

17  advertising for sale and selling its products in the State of California via its interactive commercial

18  website, said defendant entered into repeated sales contracts with the residents of the State of

19  California knowing that it would receive commercial gain and therefore purposefully availed itself

20  of the privilege of conducting activities in the State of California.  Said defendant has taken

21  deliberate actions within the State of California and has created obligations to residents in the State

22  of California through sales of its products on its website.  Plaintiffs' claims arose out of or resulted

23  from said defendant's conduct of selling its products in the State of California.

24       5.    At all times mentioned herein, Defendant TODD MUIRHEAD is an individual

25  citizen and resident of the State of Georgia.  At all times mentioned herein, Defendant TODD

26  MUIRHEAD is the registered patent owner of the ghillie suit product at issue.  By advertising for

27  sale and selling said products in the State of California via his interactive commercial website, said

{H:\WDOCS\6183\71353\pleading\08086038.DOC}
COMPLAINT FOR DAMAGES                                                                              -2-

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 5 of 85

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 16 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/18/2006    Page 3 of 23

1  defendant entered into repeated sales contracts with the residents of the State of California knowing

2  that he would receive commercial gain and therefore purposefully availed himself of the privilege of

3  conducting activities in the State of California. Said defendant has taken deliberate actions within

4  the State of California and has created obligations to residents in the State of California through

5  sales of its products on its website. Plaintiffs' claims arose out of or resulted from said defendant's

6  conduct of selling its products in the State of California.

7      6.    At all times mentioned herein, Defendant NEW YORK FIRE-SHIELD

8  INCORPORATED, D/B/A AND A/K/A N.Y. FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW

9  YORK FIRE-SHIELD, INC. is a corporation duly organized and existing under the laws of the State

10  of New York, with its principal place of business in the State of New York. At all times mentioned

11  herein, Defendant NEW YORK FIRE-SHIELD INCORPORATED, D/B/A AND A/K/A N.Y.

12  FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW YORK FIRE-SHIELD, INC. engaged in

13  substantial, continuous and systematic activities in the State of California. By advertising for sale

14  and selling its products in the State of California via its interactive commercial website, said

15  defendant entered into repeated sales contracts with the residents of the State of California knowing

16  that it would receive commercial gain and therefore purposefully availed itself of the privilege of

17  conducting activities in the State of California. Said defendant has taken deliberate actions within

18  the State of California and has created obligations to residents in the State of California through

19  sales of its products on its website. Plaintiffs' claims arose out of or resulted from said defendant's

20  conduct of selling its products in the State of California.

21      7.    At all times mentioned herein, Defendant WACKENHUT SERVICES,

22  INCORPORATED AND/OR THE WACKENHUT CORPORATION is a corporation duly

23  organized and existing under the laws of the State of Florida, with its principal place of business in

24  the State of Florida. At all times mentioned herein, Defendant WACKENHUT SERVICES,

25  INCORPORATED AND/OR THE WACKENHUT CORPORATION engaged in substantial,

26  continuous and systematic activities in the State of California. By advertising for sale and selling its

27  products and services in the State of California via its interactive commercial website, said

{H:\WDOCS\16183\71353\pleading\00086038.DOC}
COMPLAINT FOR DAMAGES                                                                    -3-

Case 5:08-cv-02099-JF     Document 35     Filed 08/13/2008     Page 6 of 85

Case 5:06-cv-06507-JW-RS     Document 64     Filed 03/23/2007     Page 17 of 36
Case 5:06-cv-06507-RS     Document 1     Filed 10/18/2006     Page 4 of 23

1  defendant entered into sales and service contracts with the residents of the State of California
2  knowing that it would receive commercial gain and therefore purposefully availed itself of the
3  privilege of conducting activities in the State of California. Said defendant has taken deliberate
4  actions within the State of California and has created obligations to residents in the State of
5  California through sales of its products on its website. Plaintiffs' claims arose out of or resulted
6  from said defendant's conduct of selling its products or services in the State of California.

7       8.      The true names and/or capacities, whether individual, partnership, corporate,
8  associate, or otherwise of Defendants, DOES 1 through 50, inclusive, are unknown to Plaintiffs,
9  who therefore sue said Defendants by such fictitious names and will ask leave to amend this
10  complaint to show their true names and capacities when the same have been ascertained. Plaintiffs
11  are informed and believe and on such information and belief allege that each of the Defendants
12  designated herein as DOE is responsible in some manner for the events and happenings herein
13  referred to, and that there is now due, owing and unpaid from said Defendants, and each of them, to
14  Plaintiffs, the sums which are hereinafter alleged.

15       9.      At all relevant times, each of the Defendants was the agent, principal, servant,
16  master, employee, employer, partner, joint venturer, alter ego, aider and abettor, co-conspirator,
17  enterprise, franchisee and/or franchisor of each of the other Defendants. At all relevant times, and
18  with regard to all relevant tortuous conduct herein alleged, each of said Defendants was acting
19  within the course and scope and in furtherance of the object of said agency, service, employment,
20  partnership, joint venture, conspiracy, enterprise, and/or franchise. At all times herein mentioned,
21  each of the Defendants was the agent, servant, employee, partner, joint venturer, and/or franchisee
22  of each of the remaining Defendants herein, and were at all times acting within the purpose and
23  scope of said agency, service, employment, partnership, joint venture, and/or franchise.

24                              **JURISDICTION**

25       10.     Plaintiffs refer to paragraphs 1-9 as set forth above and by this reference incorporate
26  the same herein as though set forth in full.

27       11.     This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C.

1   §1332 based on the diversity of the parties' citizenship and the amount in controversy, which

2   exceeds $75,000, exclusive of interest and costs.

3                                         **VENUE**

4        12.    Venue is proper in this District pursuant to 28 U.S.C. §1391 in that the claim arose in

5   this District.

6                            **INTRADISTRICT ASSIGNMENT**

7        13.    Pursuant to Local Rule 3-2(e), this case is properly assigned to the San Jose Division

8   in that the claim arose in the County of Monterey, State of California.

9                              **FACTUAL ALLEGATIONS**

10       14.    Plaintiffs refer to paragraphs 1-13 as set forth above and by this reference incorporate

11  the same herein as though set forth in full.

12       15.    Severe burn injuries occurred to Plaintiff Jeremy Ehart, a Lance Corporal in the

13  United States Marine Corps, and to Plaintiff Steven McClanahan, a Corporal in the United States

14  Marine Corps, on October 28, 2004 while participating in a military exercise at Fort Hunter Liggett,

15  located in the City of Jolon, County of Monterey, State of California.  Approximately twenty five

16  Marines were assigned to participate in Exercise Pacific Patriot at Fort Hunter Liggett, sponsored by

17  the Department of Energy ("DOE"), from October 5, 2004 to November 5, 2004.  The DOE

18  provided all gear, equipment and weapons for the exercise.  This included 15 commercial ghillie

19  suits, consisting of a blouse and pair of trousers, purchased from Defendants Muirhead and Ghillie

20  Suits.com.  Said ghillie suits were Desert Storm era desert utilities with jute fabric sewn onto them.

21       16.    In addition to providing the ghillie suits to Plaintiffs Jeremy Ehart and Steven

22  McClanahan, the DOE provided the weapons to use in the exercise.  All training with weapons was

23  blank fire.  Defendant Wackenhut developed and implemented the porting procedure used to modify

24  the weapon used by Plaintiff Jeremy Ehart at the time of the incident.

25       17.    Muirhead and Ghillie Suits.com offered for sale and sold with said ghillie suits "Fire-

26  Proof-It Spray," which is an 8-ounce finger spray bottle of "Inspecta-Shield" fire retardant that is

27  applied to the ghillie suit.

Case 5:08-cv-02099-JF     Document 35     Filed 08/13/2008     Page 8 of 85

Case 5:06-cv-06507-JW-RS   Document 64   Filed 03/23/2007   Page 18 of 36
Case 5:06-cv-06507-RS   Document 1   Filed 10/16/2006   Page 6 of 23

18.     The "Inspecta-Shield" fire retardant is manufactured by Defendant New York Fire-Shield.  The smallest bottle of fire retardant that New York Fire-Shield manufactures is a 32-ounce bottle.

19.     Muirhead and Ghillie Suits.com provided 8-ounce bottles of "Inspecta-Shield" Class "A" fire retardant with the 15 ghillie suits, which again consisted of one blouse and one pair of trousers, which designated marines applied to the ghillie suits prior to the training exercise.

20.     No specific on-product directions were provided from Muirhead and Ghillie Suits.com on how to properly apply the fire retardant.  Further, no separate written instructions were supplied by Muirhead and Ghillie Suits.com on how to properly apply the fire retardant.

21.     Three marines applied the fire retardant to all of the ghillie suits prior to any training being conducted.  There were no on-product instructions provided by Defendants Muirhead and Ghillie Suits.com on how frequently to reapply the fire retardant or under what conditions the fire retardant would be degraded.  Further, no separate written instructions were supplied by Muirhead and Ghillie Suits.com on how frequently to reapply the fire retardant or under what conditions the fire retardant would be degraded.

22.     On the morning of October 28, 2004, Plaintiffs Jeremy Ehart and Steven McClanahan arrived at their fighting positions.  There was approximately 40-meters distance between Plaintiff Steven McClanahan's fighting position and Plaintiff Jeremy Ehart's fighting position.  Both Plaintiffs Jeremy Ehart and Steven McClanahan were wearing ghillie suits that were purchased from Muirhead and Ghillie Suits.com.

23.     At approximately 11:05 on October 28, 2004, Plaintiff Jeremy Ehart engaged DOE agents in a convoy from their fighting positions.  Plaintiff Jeremy Ehart was using an M60 machine gun at the time of the incident.  At approximately 11:06 on October 28, 2004, Plaintiff Jeremy Ehart's ghillie suit caught on fire.  Plaintiff Jeremy Ehart rose from his fighting position and ran towards Plaintiff Steven McClanahan while calling for help.  Plaintiff Steven McClanahan, after removing the blouse portion of his ghillie suit, attempted to put out the flames on Plaintiff Jeremy Ehart by smothering the flames and attempting to get Plaintiff Jeremy Ehart to roll on the ground.

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 9 of 85

Case 5:06-cv-06507-W-RS    Document 64    Filed 03/23/2007    Page 19 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/19/2006    Page 7 of 23

24.     In the process of attempting to rescue Plaintiff Jeremy Ehart, Plaintiff Steven McClanahan's ghillie suit also caught on fire. A paramedic arrived within two to three minutes of the mayday call and used a fire extinguisher to put out the flames burning Plaintiff Ehart. An unidentified individual used a fire extinguisher to put out the flames burning Plaintiff McClanahan.

25.     In addition to airway swelling and lung injury, Plaintiff Jeremy Ehart sustained 50-60% total body surface area burns, including both full thickness and partial thickness burns. His legs, from the groin to the area above the top of this boots, sustained full thickness burns. His right arm from the shoulder down and his left arm from the mid-bicep down sustained a mix of full and partial thickness burns. His face sustained full thickness burns. Plaintiff Jeremy Ehart was not able to return to full active duty as a result of the catastrophic injuries sustained. On the 28th day of April, 2006, Plaintiff Jeremy Ehart was medically discharged from the United States Marine Corps due to the physical conditions sustained in the occurrence made the basis of this lawsuit.

26.     Plaintiff McClanahan sustained 20-30% total body surface area burns on his legs and back. The burns varied from second degree partial thickness burns to third degree full thickness burns.

27.     As a result of said injuries, Plaintiffs have received, and will in the future continue to receive, medical and hospital care and treatment provided by and through the United States of America. The Plaintiffs, for the sole use and benefit of the United States of America, under the provisions of 42 U.S.C. §§ 2651-2653 et seq. and 10 U.S.C. §1095, and with its express consent, assert a claim for the cost of said medical and hospital care and treatment and the value of future care..

## COUNT ONE

(Strict Liability – Design Defect – Against Muirhead, Ghillie Suits.com and Does 1 through 5)

AS AND FOR A FIRST COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as follows:

28.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 27 as if fully set forth

Case 5:06-cv-06507-JW-RS    Document 64-1    Filed 03/23/2007    Page 20 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/13/2006    Page 8 of 23

1  herein.

2      29.     Plaintiffs are informed and believe and thereon allege that said Defendants, at all

3  times herein mentioned, were in the business of manufacturing, researching, designing, assembling,

4  testing, producing, constructing, assembling, inspecting, distributing, marketing, and advertising for

5  sale and selling to and for the use of the general public ghillie suits, or components of it

6  manufactured by said Defendants, which is the subject matter of this Complaint. Said Defendants

7  are responsible in some manner for placing said product or causing it to be placed into the stream of

8  commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said

9  Defendants, and each of them.

10      30.     At the time said Plaintiffs used said ghillie suits, the suits were substantially the same

11  as when they left the possession of said Defendants. Any changes made to the suits after they left

12  said Defendants' possession, such as the application of fire retardant spray to said suits, were

13  reasonably foreseeable to said Defendants.

14      31.     Said ghillie suits did not perform as safely as an ordinary consumer would have

15  expected at the time of use, in that the suits were highly flammable despite the fire retardant sprayed

16  on them. The suits were used in a way that was reasonably foreseeable to said Defendants.

17      32.     Said Defendants, by way of advertisement and through their website, made certain

18  representations and misrepresentations concerning the character or quality of the ghillie suits and

19  fire retardant sold by said Defendants. The purchaser of the ghillie suits relied upon the

20  misrepresentation made by said Defendants and passed on the ghillie suits and fire retardant, which

21  gave rise to the physical injuries to Plaintiffs as set out above and below.

22      33.     While utilizing said ghillie suits in the manner intended, said Plaintiffs were injured

23  in their health, strength, and activity, and sustained injury to their body and shock and injury to their

24  nervous system and persons, all of which have caused and continue to cause them great mental,

25  physical, and nervous pain and suffering. These injuries will result in some permanent disability to

26  said Plaintiffs, all to their general damage. The flammability of said ghillie suits and failure to

27  perform safely was a substantial factor in causing Plaintiffs' harm.

1    34.    As a further legal result of the conduct of said Defendants, and each of them, said

2  Plaintiffs were required to and did employ physicians, surgeons and nurses for examination,

3  treatment and care, and incurred and will continue to incur additional medical and incidental

4  expenses, the exact amount of which is unknown to said Plaintiffs at this time.

5    35.    As a further legal result of the conduct of said Defendants and because of Plaintiffs'

6  injuries, said Plaintiffs have been, and will continue to be, prevented from working in their

7  occupations.  The amount of earnings which will be lost to said Plaintiffs is unknown at this time.

8  Plaintiffs are informed and believe that their inability to work and/or reduction in their earning

9  capacity will continue in the future, thereby causing a further loss of earnings and/or earning

10  capacity, the exact amount of which is unknown to said Plaintiffs at this time.

11    36.    As a further legal result of the conduct of said Defendants, said Plaintiffs have

12  incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs

13  are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

14             **COUNT TWO**

15  **(Strict Liability – Design Defect – Against New York Fire-Shield and Does 6 through 10)**

16      AS AND FOR A SECOND COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

17  Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as

18  follows:

19    37.    Plaintiffs hereby re-allege and incorporate paragraphs 1 through 36 as if fully set

20  forth herein.

21    38.    Plaintiffs are informed and believe and thereon allege that said Defendants, at all

22  times herein mentioned, were in the business of manufacturing, researching, designing, assembling,

23  testing, producing, constructing, assembling, inspecting, distributing, marketing, and advertising for

24  sale and selling to and for the use of the general public Inspecta-Shield fire retardant, or components

25  of it manufactured by said Defendants, which is the subject matter of this Complaint.  Said

26  Defendants are responsible in some manner for placing said product or causing it to be placed into

27  the stream of commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 12 of 85

Case 5:06-cv-06505-JW-RS    Document 64    Filed 03/23/2007    Page 32 of 36
Case 5:06-cv-06505-JW-RS    Document 41    Filed 08/18/2003    Page 16 of 23

1   the acts of said Defendants, and each of them.

2       39.    At the time Plaintiffs used said fire retardant, the product was substantially the same

3   as when they left the possession of said Defendants.

4       40.    Said fire retardant did not perform as safely as an ordinary consumer would have

5   expected at the time of use, in that the ghillie suits worn by Plaintiffs Jeremy Ebart and Steven

6   McClanahan as described above were highly flammable despite the fire retardant being sprayed on

7   them. The fire retardant was used in a way that was reasonably foreseeable to said Defendants.

8       41.    Said Defendants, by way of advertisement and/or through their website, made certain

9   representations and misrepresentations concerning the character or quality of the fire retardant sold

10  by and supplied to Ghillie Suits.com. Ghillie Suits.com relied upon the misrepresentation made by

11  Defendant New York Fire-Shield and Does 6 through 10 and passed on the fire retardant, which

12  gave rise to the physical injuries to said Plaintiffs as set out above and below.

13      42.    While utilizing said fire retardant in the manner intended, said Plaintiffs were injured

14  in their health, strength, and activity, and sustained injury to their body and shock and injury to their

15  nervous system and persons, all of which have caused and continue to cause them great mental,

16  physical, and nervous pain and suffering. These injuries will result in some permanent disability to

17  said Plaintiffs, all to their general damage. The flammability of said ghillie suits despite the use of

18  fire retardant spray and the failure of said spray to perform safely was a substantial factor in causing

19  Plaintiffs' harm.

20      43.    As a further legal result of the conduct of said Defendants, said Plaintiffs were

21  required to and did employ physicians, surgeons and nurses for examination, treatment and care, and

22  incurred and will continue to incur additional medical and incidental expenses, the exact amount of

23  which is unknown to said Plaintiffs at this time.

24      44.    As a further legal result of the conduct of said Defendants and because of Plaintiffs'

25  injuries, said Plaintiffs have been, and will continue to be, prevented from working in their

26  occupations. The amount of earnings which will be lost to said Plaintiffs is unknown at this time.

27  Plaintiffs are informed and believes that their inability to work and/or reduction in his earning

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 13 of 85

Case 5:06-cv-06507-JW RS   Document 64   Filed 08/23/2007   Page 23 of 36
Case 5:06-cv-06507-RS   Document 1   Filed 10/18/2006   Page 13 of 23

1  capacity will continue in the future, thereby causing a further loss of earnings and/or earning

2  capacity, the exact amount of which is unknown to said Plaintiffs at this time.

3      45.    As a further legal result of the conduct of said Defendants, said Plaintiffs have

4  incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs

5  are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

6                                   **COUNT THREE**

7          **(Strict Liability – Design Defect – Against Wackenhut and Does 11 through 15)**

8          AS AND FOR A THIRD COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

9  Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

10     46.    Plaintiffs hereby re-allege and incorporate paragraphs 1 through 45 as if fully set

11  forth herein.

12     47.    Plaintiffs are informed and believe and thereon allege that said Defendants, at all

13  times herein mentioned, were in the business of manufacturing, researching, designing, assembling,

14  modifying, testing, producing, constructing, assembling, inspecting, distributing, marketing, and

15  advertising for sale and selling machine guns or components of machine guns manufactured by said

16  Defendants, which is the subject matter of this Complaint.  Said Defendants are responsible in some

17  manner for placing said product or causing it to be placed into the stream of commerce, such that

18  Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said Defendants, and

19  each of them.

20     48.    At the time Plaintiff Jeremy Ehart used said machine gun, the product was

21  substantially the same as when they left the possession of said Defendants.

22     49.    Said machine gun did not perform as safely as an ordinary consumer would have

23  expected at the time of use, in that the amount of muzzle flash and receiver signature on said gun

24  was not normal.  The machine gun was used in a way that was reasonably foreseeable to said

25  Defendants.

26     50.    While utilizing said machine gun in the manner intended, said Plaintiffs were injured

27  in their health, strength, and activity, and sustained injury to their body and shock and injury to their

1  nervous system and persons, all of which have caused and continue to cause them great mental,

2  physical, and nervous pain and suffering.  These injuries will result in some permanent disability to

3  said Plaintiffs, all to their general damage.  The abnormal amount of muzzle flash and receiver

4  signature on the gun was a substantial factor in causing Plaintiffs' harm.

5      51.    As a further legal result of the conduct of said Defendants, said Plaintiffs were

6  required to and did employ physicians, surgeons and nurses for examination, treatment and care, and

7  incurred and will continue to incur additional medical and incidental expenses, the exact amount of

8  which is unknown to said Plaintiffs at this time.

9      52.    As a further legal result of the conduct of said Defendants, and because of Plaintiffs'

10  injuries, said Plaintiffs have been, and will continue to be, prevented from working in their

11  occupations.  The amount of earnings which will be lost to said Plaintiffs is unknown at this time.

12  Plaintiffs are informed and believes that their inability to work and/or reduction in his earning

13  capacity will continue in the future, thereby causing a further loss of earnings and/or earning

14  capacity, the exact amount of which is unknown to said Plaintiffs at this time.

15      53.    As a further legal result of the conduct of said Defendants, said Plaintiffs have

16  incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs

17  are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

18                          COUNT FOUR

19      (Strict Liability – Failure to Warn – Against Muirhead, Ghillie Suits.com and

20                          Does 1 through 5)

21      AS AND FOR A FOURTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

22  Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as

23  follows:

24      54.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 53 as if fully set forth

25  herein.

26      55.    The ghillie suits that were involved in the subject incident had been distributed,

27  marketed and sold by said Defendants without adequate warnings and/or instructions.

56. Said ghillie suits had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said suits were highly flammable despite the fire retardant sprayed on them.

57. The potential risks of said ghillie suits presented a substantial danger to users of the product. Ordinary consumers would not have recognized the potential risks described above.

58. Said Defendants failed to adequately warn and/or instruct of the potential risks as described above. Said Defendants also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant after repackaging it in smaller quantities than sold by the manufacturer. The instructions provided by said Defendants with the 8-ounce bottles of fire retardant were minimal, and therefore, the amount of retardant applied to the suits was inadequate to prevent an instantaneous and catastrophic fire. The fire-resistant treatment recommended by said Defendants was not sufficient to adequately alter the flammability and fire performance characteristics of the ghillie suit.

59. Said ghillie suits were used in a way that was reasonably foreseeable to said Defendants.

60. While utilizing said ghillie suits in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a substantial factor in causing Plaintiffs' harm.

## COUNT FIVE

**(Strict Liability – Failure to Warn – Against New York Fire-Shield and Does 6 through 10)**

AS AND FOR A FIFTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as follows:

61. Plaintiffs hereby reallege and incorporate paragraphs 1 through 60 as if fully set forth herein.

62. The Inspecta-Shield fire retardant that was involved in the subject incident had been distributed, marketed and sold by said Defendants without adequate warnings and/or instructions.

63.     Said fire retardant had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said fire retardant, if not applied properly, resulted in material that was highly flammable despite the fire retardant being sprayed on the material.

64.     The potential risks of said fire retardant presented a substantial danger to users of the fire retardant product. Ordinary consumers would not have recognized the potential risks described above.

65.     Said Defendants failed to adequately warn and/or instruct of the potential risks as described above. Said Defendants also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant or instructions regarding how much fire retardant was needed to adequately alter the flammability and fire performance characteristics of the material on which it was being applied. Said fire retardant was used in a way that was reasonably foreseeable to said Defendants.

66.     While utilizing said fire retardant in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a substantial factor in causing Plaintiffs' harm.

## COUNT SIX

**(Strict Liability – Failure to Warn – Against Wackenhut and Does 11 through 15)**

AS AND FOR A SIXTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

67.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 66 as if fully set forth herein.

68.     The machine gun that was involved in the subject incident had been distributed, modified, marketed and/or sold by said Defendants without adequate warnings and/or instructions.

69.     Said machine gun had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that the amount of muzzle flash and receiver signature on said gun was not normal.

70.    The potential risks of said machine gun presented a substantial danger to users of the product. Ordinary consumers would not have recognized the potential risks described above.

71.    Said Defendants failed to adequately warn and/or instruct of the potential risks as described above.

72.    Said machine gun was used in a way that was reasonably foreseeable to said Defendants.

73.    While utilizing said machine gun in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a substantial factor in causing said Plaintiffs' harm.

## COUNT SEVEN

### (Negligence – Against Muirhead, Ghillie Suits.com and Does 1 through 5)

AS AND FOR A SEVENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as follows:

74.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 73 as if fully set forth herein.

75.    Said Defendants were negligent in designing, manufacturing, supplying, and inspecting the ghillie suits worn by Plaintiffs Jeremy Ehart and Steven McClanahan. Said Defendants were also negligent in failing to use reasonable care to warn or instruct about the product's dangerous condition or about facts that made the product likely to be dangerous. Said Defendants were also negligent in failing to test the products they sold. Said Defendants knew or reasonably should have known that the ghillie suits were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

76.    Said Defendants knew or reasonably should have known that users would not realize the dangers of said ghillie suits.

77.    Said Defendants failed to adequately warn of the danger or instruct on the safe use of said product. Said Defendants did not provide proper instructions on how to apply the "Inspecta-

1  Shield" fire retardant, nor did they provide an adequate quantity of fire retardant after repackaging it

2  in smaller quantities than sold by the manufacturer. The instructions provided by said Defendants

3  were minimal, and therefore, the amount of retardant applied to the suits was inadequate to prevent

4  an instantaneous and catastrophic fire. The fire-resistant treatment recommended by said

5  Defendants was not sufficient to adequately alter the flammability and fire performance

6  characteristics of the ghillie suit.

7      78.    A reasonable manufacturer, distributor or seller under same or similar circumstances

8  would have warned of said foreseeable dangers or instructed on the safe use of the product.

9      79.    While utilizing said ghillie suits in the manner intended by said Defendants, said

10  Plaintiffs were injured as set forth above. Said Defendants' failure to warn or instruct was a

11  substantial factor in causing Plaintiffs' harm.

12                            **COUNT EIGHT**

13          (Negligence – Against New York Fire-Shield and Does 6 through 10)

14      AS AND FOR A EIGHTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

15  Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as

16  follows:

17      80.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 79 as if fully set forth

18  herein.

19      81.    Said Defendants were negligent in designing, manufacturing, supplying, and

20  inspecting the Inspecta-Shield fire retardant used by Plaintiffs Jeremy Ehart and Steven

21  McClanahan. Said Defendants were also negligent in failing to use reasonable care to warn or

22  instruct about the product's dangerous condition or about facts that made the product likely to be

23  dangerous. Said Defendants knew, or reasonably should have known, that the fire retardant was

24  dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

25      82.    Said Defendants knew or reasonably should have known that users would not realize

26  the dangers of said Inspecta-Shield fire retardant.

27      83.    Said Defendants failed to adequately warn of the danger or instruct on the safe use of

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 19 of 85

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 29 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/18/2006    Page 17 of 23

1   said product. Said Defendants did not provide adequate warnings and instructions for use on how to

2   apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant

3   to distributors or monitor how said fire retardant was being repackaged once it was sold by the

4   manufacturer to distributors.

5       84.    A reasonable manufacturer, distributor or seller, under the same or similar

6   circumstances, would have warned of said foreseeable dangers and provided adequate instructions

7   for the safe use of the product.

8       85.    While utilizing said fire retardant spray in the manner intended by said Defendants,

9   said Plaintiffs were injured as set forth above. Said Defendants' failure to warn or instruct was a

10  substantial factor in causing Plaintiffs' harm.

11  **COUNT NINE**

12  **(Negligence -- Against Wackenhut and Does 11 through 15)**

13      AS AND FOR A NINTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ebart and

14  Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

15      86.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 85 as if fully set forth

16  herein.

17      87.    Said Defendants were negligent in designing, manufacturing, modifying, supplying,

18  and inspecting the machine gun used by Plaintiff Jeremy Ebart at the time and place described

19  above. Said Defendants were also negligent in failing to use reasonable care to warn or instruct

20  about the product's dangerous condition or about facts that made the product likely to be dangerous.

21  Said Defendants were also negligent in failing to test the machine gun at issue. Said Defendants

22  knew or reasonably should have known that the machine gun at issue was dangerous or were likely

23  to be dangerous when used in a reasonably foreseeable manner.

24      88.    Said Defendants knew or reasonably should have known that users would not realize

25  the dangers of said machine gun.

26      89.    Said Defendants failed to adequately warn of the danger or instruct on the safe use of

27  said machine gun.

90.    A reasonable manufacturer, modifier, distributor or seller under same or similar circumstances would have warned of said foreseeable dangers or instructed on the safe use of the product.

91.    While utilizing said machine gun in the manner intended by said Defendants, said Plaintiffs Jeremy Ehart and Steven McClanahan were injured as set forth above.  Said Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

**COUNT TEN**

**(Breach of Implied Warranty of Fitness for a Particular Purpose – Against Muirhead, Ghillie Suits.com and Does 1 through 5)**

AS AND FOR AN TENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as follows:

92.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 91 as if fully set forth herein.

93.    Said ghillie suit was purchased for a particular purpose, i.e., safe camouflage.

94.    At the time of the sale, said Defendants knew or had reason to know the particular purpose for which each of the Plaintiffs would use the ghillie suits.

95.    Said Defendants knew or had reason to know that each of the Plaintiffs relied upon the skill and judgment of said Defendants to create, market, test, and sell a suitable and safe product.

96.    Said Defendants, through their agents, employees, subsidiaries, representatives and affiliates, warranted that said ghillie suits were suitable for the particular purpose for which it was utilized by each of the Plaintiffs.

97.    At the time it was manufactured and at all subsequent times, said ghillie suits were not as warranted, but were unfit for the particular purpose for which they were intended in that they were defective, causing each of Plaintiffs to suffer damages and consequential damages in an amount in excess of the minimum jurisdictional limits of the Court that are more fully set forth herein.

98. As a direct and proximate cause of each of the Defendants' breach of the implied warranty of fitness for a particular purpose and the resulting dangers associated with the use of said ghillie suits, each of the Plaintiffs sustained medical expenses from hospitals, physicians, surgeons, at-home care, and incidental expenses, and each Plaintiff will necessarily incur additional such expenses for an indefinite period of time in the future. Each Plaintiff also sustained physical pain and suffering and mental anguish damages in the past and future, as well as a loss of earnings, past, present, and future, and a loss of earning capacity.

## COUNT ELEVEN

**(Breach of Implied Warranty of Fitness for a Particular Purpose — Against New York Fire-Shield and Does 6 through 10)**

AS AND FOR AN ELEVENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as follows:

99. Plaintiffs hereby reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

100. Said Inspecta-Shield fire retardant was purchased for a particular purpose, i.e., to make materials fire retardant.

101. At the time of the sale, said Defendants knew or had reason to know the particular purpose for which each of the Plaintiffs would use the Inspecta-Shield fire retardant.

102. Said Defendants knew or had reason to know that each of the Plaintiffs relied upon the skill and judgment of said Defendants to create, market, test, and sell a suitable and safe product.

103. Said Defendants, through their agents, employees, subsidiaries, representatives and affiliates, warranted that said Inspecta-Shield fire retardant was suitable for the particular purpose for which it was utilized by each of the Plaintiffs.

104. At the time it was manufactured and at all subsequent times, said Inspecta-Shield fire retardant was not as warranted, but were unfit for the particular purpose for which it was intended in that it was defective, causing each of Plaintiffs to suffer damages and consequential damages in an

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 22 of 85

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 32 of 36
Case 5:06-cv-06507-JW    Document 1    Filed 10/18/2006    Page 20 of 23

1  amount in excess of the minimum jurisdictional limits of the Court that are more fully set forth

2  herein.

3         105.    As a direct and proximate cause of each of the Defendants' breach of the implied

4  warranty of fitness for a particular purpose and the resulting dangers associated with the use of said

5  Inspecta-Shield fire retardant, each of the Plaintiffs sustained medical expenses from hospitals,

6  physicians, surgeons, at-home care, and incidental expenses, and each Plaintiff will necessarily incur

7  additional such expenses for an indefinite period of time in the future.  Each Plaintiff also sustained

8  physical pain and suffering and mental anguish damages in the past and future, as well as a loss of

9  earnings, past, present, and future, and a loss of earning capacity.

10                              COUNT TWELVE

11     (Breach of Implied Warranty of Fitness for a Particular Purpose – Against Wackenhut and

12                          Does 11 through 15)

13         AS AND FOR AN TWELFTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart

14  and Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

15         106.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 105 as if fully set

16  forth herein.

17         107.    Said gun was purchased for a particular purpose, i.e., for safe use in military

18  exercises.

19         108.    At the time of the sale, said Defendants knew or had reason to know the particular

20  purpose for which each of the Plaintiffs would use said gun.

21         109.    Said Defendants knew or had reason to know that each of the Plaintiffs relied upon

22  the skill and judgment of said Defendants to create, market, test, modify and sell a suitable and safe

23  product.

24         110.    Said Defendants, through their agents, employees, subsidiaries, representatives and

25  affiliates, warranted that said gun was suitable for the particular purpose for which it was utilized by

26  each of the Plaintiffs.

27         111.    At the time it was manufactured and at all subsequent times, said gun was not as

1   warranted, but were unfit for the particular purpose for which it was intended in that it was

2   defective, causing each of Plaintiffs to suffer damages and consequential damages in an amount in

3   excess of the minimum jurisdictional limits of the Court that are more fully set forth herein.

4       112.   As a direct and proximate cause of each of the Defendants' breach of the implied

5   warranty of fitness for a particular purpose and the resulting dangers associated with the use of said

6   Inspecta-Shield fire retardant, each of the Plaintiffs sustained medical expenses from hospitals,

7   physicians, surgeons, at-home care, and incidental expenses, and each Plaintiff will necessarily incur

8   additional such expenses for an indefinite period of time in the future. Each Plaintiff also sustained

9   physical pain and suffering and mental anguish damages in the past and future, as well as a loss of

10  earnings, past, present, and future, and a loss of earning capacity.

**COUNT THIRTEEN**

(Loss of Consortium – Against All Defendants)

13      AS AND FOR A THIRTEENTH COUNT TO THIS COMPLAINT, Plaintiff Kristy Ehart

14  alleges against Defendants, and each of them, as follows:

15      113.   Plaintiff hereby realleges and incorporates paragraphs 1 through 112 as if fully set

16  forth herein.

17      114.   At all times herein mentioned, Plaintiff Kristy Ehart and Plaintiff Jeremy Ehart were

18  husband and wife, respectively. By reason of the injuries to Plaintiff Jeremy Ehart as described

19  herein, Plaintiff Kristy Ehart has been deprived of the consortium of Plaintiff Jeremy Ehart.

**DEMAND FOR JURY TRIAL**

21      Plaintiffs hereby demand a jury for all claims which a jury is permitted.

**PRAYER**

23      WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

24  follows:

25      1.     For general damages according to proof;

26      2.     For medical and incidental expenses according to proof;

27      3.     For loss of earnings and earning capacity according to proof;

1    4.    For prejudgment interest on all general and special damages according to law;

2    5.    For costs of suit herein; and,

3    6.    For such other and further relief as the court deems just and proper.

4    Dated: 10/17/06

5                                    NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

6

7                    By:

8                                    CRAIG NEEDHAM
                                     *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

{H:\WDOCS\6183\71353\pleadine\00085048.DOC}
COMPLAINT FOR DAMAGES                                                    -22-

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: 10/16/06

NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

By: _____

CRAIG NEEDHAM
Attorneys for Plaintiffs

[H:\WDOCS\51831\71353\pleading\00026038.DOC]
COMPLAINT FOR DAMAGES

-23-

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007

## PROOF OF SERVICE

**Name of Action:** Ehart v. Ghillie Suits.Com, Inc., et al.
**Court and Action No:** United States District Court, Northern District, San Jose Division
**Action No. C 06 06507 RS**

I, Karen D. Tallman, declare that I am over the age of eighteen years and not a party to this action or proceeding. My business address is 2033 North Main Street, Suite 800, PO Box 8035, Walnut Creek, California 94596-3728. On March 23, 2007, I caused the following document(s) to be served:

NEW YORK FIRE SHIELD, INC.'S CROSS-CLAIM FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, MISLEADING ADVERTISING , EQUITABLE INDEMNITY, TOTAL INDEMNITY, CONTRIBUTION, AND DEMAND FOR JURY TRIAL

[X] I electronically served the above referenced document(s) through e-File. E-service in this action was completed on all parties listed on the service list with the United States District Court e-File website.

Craig Needham, Esq.
Kirsten Fish, Esq.
Needham, Davis, Kepner & Young
1960 The Alameda, Suite 210
San Jose, CA 95126
Phone: 408.244.2166
Fax: 408.244.7815
*Attorneys for Plaintiffs Jeremy James Ehart, Kristie Ehart, and Steven Ryan McClanahan*

Daniel J.T. Sciano, Esq.
Tinsman &Sciano, Inc.
10107 McAllister Freeway
San Antonio, TX 78216
Phone: 210.225.3121
Fax: 210.225.6235
*Attorneys for Plaintiffs Jeremy James Ehart, Kristie Ehart, and Steven Ryan McClanahan*

Michael L. Smith, Esq.
Manning & Marder, Kass, Ellrod, Ramirez
One California Street, Suite 1100
San Francisco, CA 94111
Phone: 415.217.6990
Fax: 415.217.6999
*Attorneys for Wackenhut Services, Inc.; The Wackenhut Corporation*

Gregg A, Thornton, Esq.
Danielle K. Lewis, Esq.
Selman Breitman
33 Montgomery, Sixth Floor
San Francisco, CA 94105
Phone: 415.979.0400
Fax: 415.979.2099
*Attorneys for Ghillie Suits.Com, Inc. and Todd Muirhead*

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 23, 2007, at Walnut Creek, California.

Karen D. Tallman

N0116001/519916-1                    PROOF OF SERVICE

1  Jeffrey S. Bolender (Bar No. 174423)
2  Bolender & Associates,
   A Professional Law Corporation
3  2601 Airport Drive, Suite 360
   Torrance, CA 90505
4  Telephone: (310) 784-2443
   Facsimile: (310) 784-2444
5
6  Attorney for Plaintiff,    E-FILING
   EVANSTON INSURANCE COMPANY

*ADR*

*Filed*

APR 22 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

7
8
9            UNITED STATES DISTRICT COURT
10    NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION
11
12  EVANSTON INSURANCE COMPANY,    Case No.  C08  02099  HRL
    an Illinois corporation,
13                                 COMPLAINT FOR DECLARATORY
                 Plaintiff,        RELIEF AND REIMBURSEMENT
14
    vs.
15
16  GHILLIE SUITS.COM, INC, a
    Georgia corporation; TODD
17  MUIRHEAD, a Georgia resident;
    JEREMY JAMES EHART, a Kansas
18  resident; KRISTY EHART, a
    Kansas resident; and STEVEN
19  RYAN McCLANAHAN, a West
    Virginia resident, and DOES 1
20  - 100,
21
22               Defendants.
23
24
25
26                        EXHIBIT  1
27
28

BOLENDER & ASSOCIATES
A Professional Law Corporation
2601 Airport Dr., Suite 360
Torrance, CA 90505

1

COMPLAINT

**ORIGINAL**

1

2      Plaintiff, EVANSTON INSURANCE COMPANY brings this

3  complaint for declaratory relief and reimbursement against the

4  defendants named herein and alleges as follows:

5

6                          **JURISDICTION AND VENUE**

7

8      1.   This Court has original jurisdiction under 28 U.S.C. §

9  1332, in that this is a civil action between citizens of

10  different states in which the matter in controversy exceeds,

11  exclusive of costs and interest, seventy-five thousand dollars

12  ($75,000.00 US).

13

14     2.   Venue in this judicial district is proper under 28

15  U.S.C. § 1391, subdivision (a)(2), because the events giving

16  rise to the claims asserted herein, including the venue of the

17  Underlying Action as described below, occurred within the

18  County of Monterey in the Northern District of California.

19

20     3.   Assignment in this judicial division is proper under

21  local rule 3-2(e), because the events giving rise the claims

22  asserted herein, including the Underlying Action as described

23  below, occurred within the County of Monterey in the Northern

24  District of California.

25

26

27

28

4. This Court can enter the declaratory judgments sought herein under The Declaratory Judgment Act, 28 U.S.C. § 2201, because this case presents an actual controversy within the Court's jurisdiction. This Court also has supplemental jurisdiction over all other claims herein because said claims are so related to claims for declaratory judgment in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

5. Plaintiff Evanston Insurance Company ("Evanston") was and is a corporation, organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois, County of Cook, and at all times mentioned herein authorized to transact insurance business in the State of California, and is transacting business in the State of California.

6. Plaintiff is informed and believes, and on the basis of such information and belief alleges that at all relevant times mentioned herein, defendant, Ghillie Suits.com, Inc., d/b/a and a/k/a Ghillie Suits.com ("Ghillie") is a corporation duly organized and existing under the laws of the State of

1    Georgia, with its principle place of business in the State of
2    Georgia.
3
4
5    7.    Plaintiff is informed and believes, and on the basis
6    of such information and belief alleges that at all relevant
7    times mentioned herein, defendant Todd Muirhead ("Muirhead") is
8    an individual and a resident of the State of Georgia.  At all
9    times mentioned herein, Muirhead was the registered patent
10   owner of the Ghillie suit product at issue.  Plaintiff is
11   informed and believes, and on the basis of such information and
12   belief alleges that, at all times mentioned here, Muirhead was
13   the president and owner of Ghillie.
14
15   8.    Plaintiff is informed and believes, and on the basis
16   of such information and belief alleges that at all relevant
17   times mentioned herein, defendant Jeremy James Ehart was an
18   individual citizen and resident of the County of Reno, State of
19   Kansas.
20
21   9.    Plaintiff is informed and believes, and on the basis
22   of such information and belief alleges that at all relevant
23   times mentioned herein, defendant Kristy Ehart was an
24   individual citizen and resident of the County of Reno, State of
25   Kansas.
26
27
28

                                                          4

10. Plaintiff is informed and believes, and on the basis of such information and belief alleges that at all relevant times mentioned herein, defendant Steven Ryan McClanahan was an individual citizen and resident of the County of Summers, State of West Virginia.

11. Evanston is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names. On information and belief, Evanston alleges that each said defendant claims the right to the insurance benefits afforded under the Evanston Policy as described below. Evanston will amend this complaint to allege their true names and capacities when ascertained. Collectively, Ghillie, Muirhead, Jeremy James Ehart, Kristy Ehart, Steven Ryan McClanahan, and Does 1 - 100 are sometimes referred to as "Defendants."

### INTRODUCTION AND BACKGROUND

12. This lawsuit concerns insurance coverage for claims involving injuries allegedly sustained by Plaintiffs Jeremy Ehart and Steven McClanahan while they were wearing Ghillie products. The lawsuit is entitled: Jeremy James Ehart, Kristy Ehart and Steven Ryan McClanahan v. Ghillie Suits.com Inc., et al. (USDC ND Cal. SJ Div. Case No. 06 06507), and is referred to hereinafter as the "Underlying Action". The Underlying

Action was filed in the United States District Court for the
Northern District of California, San Jose Division.  Attached
hereto as Exhibit 1 and incorporated herein by reference is a
true and correct copy of the operative complaint filed in the
Underlying Action.

13. The general nature of the claims asserted in the
Underlying Action concern the burn related injuries of J. Ehart
and McClanahan, who each allege they suffered on October 28,
2004, while wearing Ghillie suits.  At the time of the alleged
injuries, Plaintiffs J. Ehart and McClanahan were participating
in military exercises at Fort Hunter Liggett, located in the
County of Monterey, State of California.  Specifically,
Plaintiffs describe the incident as follows:

> "On the morning of October 28, 2004, Plaintiffs
> Jeremy Ehart and Steven McClanahan arrived at their
> fighting positions.  There was approximately 40
> meters distance between Plaintiff Steven McClanahan's
> fighting position and Plaintiff Jeremy Ehart's
> fighting position.  Both Plaintiffs Jeremy Ehart and
> Steven McClanahan were wearing Ghillie suits that
> were purchased from Muirhead and Ghillie Suits.com.
> [¶] At approximately 11:05 on October 28, 2004,
> Plaintiff Jeremy Ehart engaged DOE agents in a convoy
> from their fighting positions. Plaintiff Jeremy Ehart

was using an M60 machine gun at the time of the incident.  At approximately 11:06 on October 28, 2004, Plaintiff Jeremy Ehart's Ghillie suit caught on fire. Plaintiff Jeremy Ehart rose from his fighting position and ran towards Plaintiff Steven McClanahan while calling for help.  Plaintiff Steven McClanahan, after removing the blouse portion of his Ghillie suit, attempted to put out the flames on Plaintiff Jeremy Ehart by smothering the flames and attempting to get Plaintiff Jeremy Ehart to roll on the ground. [¶]  In the process of attempting to rescue Plaintiff Jeremy Ehart, Plaintiff Steven McClanahan's Ghillie suit also caught on fire."   (Exhibit 1 [Underlying Complaint] at ¶¶22-24.)

14. As a result of the allegations quoted above, plaintiffs in the Underlying Action make the following claims against Ghillie and Muirhead:  (1) Strict Liability - Design Defect; (2) Strict Liability - Failure to Warn; (3) Negligence; (4) Breach of Implied Warranty of Fitness for a Particular Purpose. Plaintiff K. Ehart maintains a claim for loss of consortium.

15. The plaintiffs in the Underlying Action seek various forms of relief including, but not limited to: compensatory

1    damages; actual damages; lost income; special damages, and

2    attorney fees.

3

4

5    16. The amount in controversy in this case exceeds

6    $75,000.00, exclusive of costs and interest, because the

     plaintiffs in the Underlying Actions described herein seek to
7
     impose liability against Ghillie for sums in excess of
8
     $75,000.00 and Ghillie seeks from Evanston defense and
9
     indemnity benefits of the Evanston Policy in amounts far
10
     exceeding $75,000.00.
11

12

13                    **INSURANCE POLICY INFORMATION**

14

15    17. Evanston issued a commercial general liability

16    insurance policy, No. CL041400001, effective May 19, 2004 to

17    May 19, 2005, hereinafter "Evanston Policy," to the following

18    named insured: Ghillie Suits.Com Inc.  Attached here as Exhibit

19    2 is a true and correct copy of the Common Policy Declaration

20    and the Commercial General Liability Coverage Part Supplemental

21    Declarations — Limits Of Insurance.

22

23    18. Subject to various terms, conditions and other

24    limiting provisions, the Evanston Policy affords liability

25    coverage via a standard form endorsement entitled, Commercial

26    General Liability Coverage Form, Form CG 00 01 07 98,

27

28

                                                                    8
                                                             COMPLAINT

hereinafter "CGL form."  Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the CGL form.

19. Section I of the CGL form sets forth the insuring agreement and related exclusionary provisions for three types of coverages, including the insuring agreement for Coverage A, Bodily Injury and Property Damage Liability, which states in pertinent part as follows:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LI-ABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investi-gate any "occurrence" and settle any claim or "suit" that may result. ...

b. This insurance applies to "bodily injury" and "property damage" only if:

 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

 (2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

20. The Evanston Policy defines "bodily injury" as follows: "'bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

21. The Evanston Policy defines "occurrence" as follows: "'occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

22. The Evanston Policy is subject to the following Limits of Insurance:

**SECTION III LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage

B for the sum of all damages because of all "per-
sonal and advertising injury" sustained by any one
person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the
Each Occurrence Limit is the most we will pay for
the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C** because of all
     "bodily injury" and "property damage" arising
     out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented
To You Limit is the most we will pay under Coverage
A for damages because of "property damage" to any
one premises, while rented to you, or in the case
of damage by fire, while rented to you or temporar-
ily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is
the most we will pay under Coverage C for all medi-
cal expenses because of "bodily injury" sustained
by any one person.

The Limits of Insurance of this Coverage Part apply
separately to each consecutive annual period and to
any remaining period of less than 12 months, starting
with the beginning of the policy period shown in the

Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

23. The Evanston Policy includes an "each occurrence limit" of $1,000,000.00, as stated in its Commercial General Liability Coverage Part Supplemental Declarations – Limits Of Insurance.

24. Evanston is defending Ghillie and Muirhead in the Underlying Action pursuant to the limits and conditions of the Evanston Policy and subject to a reservation of rights.

## CONTENTIONS OF THE PARTIES

25. Evanston seeks a court declaration that its indemnity obligation to Ghillie and Muirhead under the Evanston Policy is limited to $1,000,000, because the Underlying Action asserts only one occurrence as defined by California law and the Evanston Policy.

26. On information and belief, Evanston alleges that Defendants, and each of them, dispute Evanston's contention and

assert that Evanston's obligation is two million dollars ($2,000,000).

27. All conditions precedent to Evanston's securing such declaratory relief have been performed, have occurred or have been otherwise excused.

28. An actual and genuine controversy exists as to the rights and liabilities of the parties herein.

## FIRST CAUSE OF ACTION

### (Declaratory Relief – Duty To Indemnify)

29. Evanston repeats, re-alleges, and incorporates herein by this reference each and every allegation set forth in Paragraph Nos. 1 through 28 above.

30. An actual controversy has arisen and presently exists between Evanston and Defendants, and each of them, concerning their respective rights and obligations under the Evanston Policy in that Evanston contends that its duty to indemnify Ghillie in the Underlying Action is limited to $1,000,000, whereas on information and belief, Evanston alleges that Defendants, and each of them, disagree with and contest said contentions.

## SECOND CAUSE OF ACTION

### (Reimbursement)

31. Evanston repeats, re-alleges, and incorporates herein by this reference each and every allegation set forth in Paragraph Nos. 1 through 30 above.

32. Evanston agreed to defend Ghillie and Muirhead in the Underlying lawsuits under a reservation of rights, including the right to seek reimbursement of any amounts paid in indemnification of Ghillie and Muirhead.

33. Pursuant to its agreement, Evanston has incurred expenses and/or may become obligated to pay money in connection with the indemnification of Ghillie Muirhead in the Underlying Action.  Evanston contends, as alleged herein, that it owes no duty to indemnify under the Evanston Policy for the reasons alleged herein.

34. Evanston contends that Ghillie and Muirhead, by virtue of payments made or to be made by Evanston, will or have been unjustly enriched by receiving policy benefits for which they are not entitled.  Evanston contends that it is entitled to reimbursement any costs paid in defense or indemnification of Defendants under the California Supreme Court holdings *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489.

| | |
|---|---|
| 1 | |

### PRAYER OF COMPLAINT

**WHEREFORE**, Evanston prays for relief as set forth below.

### ON THE FIRST CAUSE OF ACTION

1.  A judicial determination of the respective rights and obligations of Evanston and defendants, and each of them, under the Evanston Policy, including a declaration that Evanston's interpretation of said policy is correct, and that Evanston's indemnity obligations to Ghillie and Muirhead under the Evanston Policy are limited by the $1,000,000 per occurrence limit.

### ON THE SECOND CAUSE OF ACTION

2.  For a money judgment against Ghillie and Muirhead in an amount to be proven at trial with respect to any and all payments made and/or to be made by Evanston in the indemnification of Ghillie and Muirhead in the Underlying Action.

### ON ALL CAUSES OF ACTION:

3.  For costs of suit incurred herein;

4.  For all necessary and reasonable attorney fees; and

5.  For any other and further relief this court deems just

and proper.

BOLENDER & ASSOCIATES,
A Professional Law Corporation

Dated: April 18, 2008       By:

Jeffrey S. Bolender,
Attorney for Plaintiff,
Evanston Insurance Company

## DEMAND FOR TRIAL BY JURY

Evanston hereby respectfully requests a trial by jury for all claims and issues raised in its Complaint that may be entitled to a jury trial.

BOLENDER & ASSOCIATES,
A Professional Law Corporation

Dated: April 18, 2008       By:

Jeffrey S. Bolender,
Attorney for Plaintiff,
Evanston Insurance Company



10/18/06

1    CRAIG NEEDHAM (SBN 52010)
     KIRSTEN FISH (SB #217940)
2    NEEDHAM, DAVIS, KEPNER, & YOUNG, LLP
     1960 The Alameda, Suite 210
3    San Jose, CA 95126
     Tel:    (408) 244-2166
4    Fax:    (408) 244-7815

5    TINSMAN & SCIANO, INC.
     DANIEL J.T. SCIANO (Pending Admission *Pro Hac Vice*)
6    10107 McAllister Freeway
     San Antonio, Texas 78216
7    Telephone: (210) 225-3121
     Fax:  (210) 225-6235
8
     *Attorneys for Plaintiffs, JEREMY JAMES*
9    *EHART, KRISTY EHART, and STEVEN*
     *RYAN McCLANAHAN*
10

FILED

E-FILING

2006 OCT 18  P 2: 10

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

8m   #3
Fees Pd
SI

11

12                    IN THE UNITED STATES DISTRICT COURT
13                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
                              SAN JOSE DIVISION
14

15   JEREMY JAMES EHART, KRISTY        C06    06507       RS
     EHART, and STEVEN RYAN
16   McCLANAHAN,
                                       COMPLAINT FOR DAMAGES
17           Plaintiffs,
        vs.                            DEMAND FOR JURY TRIAL
18
     GHILLIE SUITS.COM INC.; TODD
19   MUIRHEAD; NEW YORK FIRE-SHIELD
     INCORPORATED; WACKENHUT
20   SERVICES, INCORPORATED; THE
     WACKENHUT CORPORATION; and
21   DOES 1 – 50, inclusive,

22           Defendants.

23

24        Plaintiffs, JEREMY JAMES EHART, KRISTY EHART, and STEVEN RYAN

25   McCLANAHAN (referred to collectively as "Plaintiffs") complain of Defendants, GHILLIE

26   SUITS.COM INC., D/B/A AND A/K/A GHILLIE SUITS.COM (referred to as "Ghillie

27   Suits.com"), TODD MUIRHEAD (referred to as "Muirhead"), NEW YORK FIRE-SHIELD

J:\LAW\DOCS\5183\71353\pleadings\00086023.DOC)
COMPLAINT FOR DAMAGES                                                    -1-

1   INCORPORATED, D/B/A AND A/K/A N.Y. FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW

2   YORK FIRE-SHIELD, INC. (referred to as "New York Fire-Shield"), WACKENHUT SERVICES,

3   INCORPORATED AND/OR THE WACKENHUT CORPORATION (referred to as "Wackenhut"),

4   and DOES 1 – 50, (collectively referred to as "Defendants") as follows:

5                              **GENERAL ALLEGATIONS**

6       1.      At all times mentioned herein, Plaintiff JEREMY JAMES EHART is an individual

7   citizen and resident of the County of Reno, State of Kansas.

8       2.      At all times mentioned herein, Plaintiff KRISTY EHART is an individual citizen and

9   resident of the County of Reno, State of Kansas.

10      3.      At all times mentioned herein, Plaintiff STEVEN RYAN McCLANAHAN is an

11  individual citizen and resident of the County of Summers, State of West Virginia.

12      4.      At all times mentioned herein, Defendant GHILLIE SUITS.COM INC., D/B/A AND

13  A/K/A GHILLIE SUITS.COM is a corporation duly organized and existing under the laws of the

14  State of Georgia, with its principle place of business in the State of Georgia.  At all times mentioned

15  herein, Defendant GHILLIE SUITS.COM INC., D/B/A AND A/K/A GHILLIE SUITS.COM

16  engaged in substantial, continuous and systematic activities in the State of California.  By

17  advertising for sale and selling its products in the State of California via its interactive commercial

18  website, said defendant entered into repeated sales contracts with the residents of the State of

19  California knowing that it would receive commercial gain and therefore purposefully availed itself

20  of the privilege of conducting activities in the State of California.  Said defendant has taken

21  deliberate actions within the State of California and has created obligations to residents in the State

22  of California through sales of its products on its website.  Plaintiffs' claims arose out of or resulted

23  from said defendant's conduct of selling its products in the State of California.

24      5.      At all times mentioned herein, Defendant TODD MUIRHEAD is an individual

25  citizen and resident of the State of Georgia.  At all times mentioned herein, Defendant TODD

26  MUIRHEAD is the registered patent owner of the ghillie suit product at issue.  By advertising for

27  sale and selling said products in the State of California via his interactive commercial website, said

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 46 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 3 of 24

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 16 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/18/2006    Page 3 of 23

1   defendant entered into repeated sales contracts with the residents of the State of California knowing

2   that he would receive commercial gain and therefore purposefully availed himself of the privilege of

3   conducting activities in the State of California. Said defendant has taken deliberate actions within

4   the State of California and has created obligations to residents in the State of California through

5   sales of its products on its website. Plaintiffs' claims arose out of or resulted from said defendant's

6   conduct of selling its products in the State of California.

7          6.      At all times mentioned herein, Defendant NEW YORK FIRE-SHIELD

8   INCORPORATED, D/B/A AND A/K/A N.Y. FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW

9   YORK FIRE-SHIELD, INC. is a corporation duly organized and existing under the laws of the State

10  of New York, with its principal place of business in the State of New York. At all times mentioned

11  herein, Defendant NEW YORK FIRE-SHIELD INCORPORATED, D/B/A AND A/K/A N.Y.

12  FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW YORK FIRE-SHIELD, INC. engaged in

13  substantial, continuous and systematic activities in the State of California. By advertising for sale

14  and selling its products in the State of California via its interactive commercial website, said

15  defendant entered into repeated sales contracts with the residents of the State of California knowing

16  that it would receive commercial gain and therefore purposefully availed itself of the privilege of

17  conducting activities in the State of California. Said defendant has taken deliberate actions within

18  the State of California and has created obligations to residents in the State of California through

19  sales of its products on its website. Plaintiffs' claims arose out of or resulted from said defendant's

20  conduct of selling its products in the State of California.

21         7.      At all times mentioned herein, Defendant WACKENHUT SERVICES,

22  INCORPORATED AND/OR THE WACKENHUT CORPORATION is a corporation duly

23  organized and existing under the laws of the State of Florida, with its principal place of business in

24  the State of Florida. At all times mentioned herein, Defendant WACKENHUT SERVICES,

25  INCORPORATED AND/OR THE WACKENHUT CORPORATION engaged in substantial,

26  continuous and systematic activities in the State of California. By advertising for sale and selling its

27  products and services in the State of California via its interactive commercial website, said

{H:\WDOCS\16183\71353\pleading\00085038.DOC}
COMPLAINT FOR DAMAGES                                                                          -3-

1   defendant entered into sales and service contracts with the residents of the State of California

2   knowing that it would receive commercial gain and therefore purposefully availed itself of the

3   privilege of conducting activities in the State of California. Said defendant has taken deliberate

4   actions within the State of California and has created obligations to residents in the State of

5   California through sales of its products on its website. Plaintiffs' claims arose out of or resulted

6   from said defendant's conduct of selling its products or services in the State of California.

7        8.     The true names and/or capacities, whether individual, partnership, corporate,

8   associate, or otherwise of Defendants, DOES 1 through 50, inclusive, are unknown to Plaintiffs,

9   who therefore sue said Defendants by such fictitious names and will ask leave to amend this

10  complaint to show their true names and capacities when the same have been ascertained. Plaintiffs

11  are informed and believe and on such information and belief allege that each of the Defendants

12  designated herein as DOE is responsible in some manner for the events and happenings herein

13  referred to, and that there is now due, owing and unpaid from said Defendants, and each of them, to

14  Plaintiffs, the sums which are hereinafter alleged.

15       9.     At all relevant times, each of the Defendants was the agent, principal, servant,

16  master, employee, employer, partner, joint venturer, alter ego, aider and abettor, co-conspirator,

17  enterprise, franchisee and/or franchisor of each of the other Defendants. At all relevant times, and

18  with regard to all relevant tortuous conduct herein alleged, each of said Defendants was acting

19  within the course and scope and in furtherance of the object of said agency, service, employment,

20  partnership, joint venture, conspiracy, enterprise, and/or franchise. At all times herein mentioned,

21  each of the Defendants was the agent, servant, employee, partner, joint venturer, and/or franchisee

22  of each of the remaining Defendants herein, and were at all times acting within the purpose and

23  scope of said agency, service, employment, partnership, joint venture, and/or franchise.

                                      **JURISDICTION**

24

25       10.    Plaintiffs refer to paragraphs 1-9 as set forth above and by this reference incorporate

26  the same herein as though set forth in full.

27       11.    This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C.

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 48 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 5 of 24
Case 5:06-cv-C   )7-JW    Document 1    Filed 10/1£   06    Page 5 of 23

1 §1332 based on the diversity of the parties' citizenship and the amount in controversy, which

2 exceeds $75,000, exclusive of interest and costs.

3 ## VENUE

4       12.    Venue is proper in this District pursuant to 28 U.S.C. §1391 in that the claim arose in

5 this District.

6 ## INTRADISTRICT ASSIGNMENT

7       13.    Pursuant to Local Rule 3-2(e), this case is properly assigned to the San Jose Division

8 in that the claim arose in the County of Monterey, State of California.

9 ## FACTUAL ALLEGATIONS

10       14.    Plaintiffs refer to paragraphs 1-13 as set forth above and by this reference incorporate

11 the same herein as though set forth in full.

12       15.    Severe burn injuries occurred to Plaintiff Jeremy Ehart, a Lance Corporal in the

13 United States Marine Corps, and to Plaintiff Steven McClanahan, a Corporal in the United States

14 Marine Corps, on October 28, 2004 while participating in a military exercise at Fort Hunter Liggett,

15 located in the City of Jolon, County of Monterey, State of California.  Approximately twenty five

16 Marines were assigned to participate in Exercise Pacific Patriot at Fort Hunter Liggett, sponsored by

17 the Department of Energy ("DOE"), from October 5, 2004 to November 5, 2004.  The DOE

18 provided all gear, equipment and weapons for the exercise.  This included 15 commercial ghillie

19 suits, consisting of a blouse and pair of trousers, purchased from Defendants Muirhead and Ghillie

20 Suits.com.  Said ghillie suits were Desert Storm era desert utilities with jute fabric sewn onto them.

21       16.    In addition to providing the ghillie suits to Plaintiffs Jeremy Ehart and Steven

22 McClanahan, the DOE provided the weapons to use in the exercise.  All training with weapons was

23 blank fire.  Defendant Wackenhut developed and implemented the porting procedure used to modify

24 the weapon used by Plaintiff Jeremy Ehart at the time of the incident.

25       17.    Muirhead and Ghillie Suits.com offered for sale and sold with said ghillie suits "Fire-

26 Proof-It Spray," which is an 8-ounce finger spray bottle of "Inspecta-Shield" fire retardant that is

27 applied to the ghillie suit.

1    18.    The "Inspecta-Shield" fire retardant is manufactured by Defendant New York Fire-

2    Shield. The smallest bottle of fire retardant that New York Fire-Shield manufactures is a 32-ounce

3    bottle.

4    19.    Muirhead and Ghillie Suits.com provided 8-ounce bottles of "Inspecta-Shield" Class

5    "A" fire retardant with the 15 ghillie suits, which again consisted of one blouse and one pair of

6    trousers, which designated marines applied to the ghillie suits prior to the training exercise.

7    20.    No specific on-product directions were provided from Muirhead and Ghillie

8    Suits.com on how to properly apply the fire retardant. Further, no separate written instructions were

9    supplied by Muirhead and Ghillie Suits.com on how to properly apply the fire retardant.

10    21.    Three marines applied the fire retardant to all of the ghillie suits prior to any training

11    being conducted. There were no on-product instructions provided by Defendants Muirhead and

12    Ghillie Suits.com on how frequently to reapply the fire retardant or under what conditions the fire

13    retardant would be degraded. Further, no separate written instructions were supplied by Muirhead

14    and Ghillie Suits.com on how frequently to reapply the fire retardant or under what conditions the

15    fire retardant would be degraded.

16    22.    On the morning of October 28, 2004, Plaintiffs Jeremy Ehart and Steven

17    McClanahan arrived at their fighting positions. There was approximately 40-meters distance

18    between Plaintiff Steven McClanahan's fighting position and Plaintiff Jeremy Ehart's fighting

19    position. Both Plaintiffs Jeremy Ehart and Steven McClanahan were wearing ghillie suits that were

20    purchased from Muirhead and Ghillie Suits.com.

21    23.    At approximately 11:05 on October 28, 2004, Plaintiff Jeremy Ehart engaged DOE

22    agents in a convoy from their fighting positions. Plaintiff Jeremy Ehart was using an M60 machine

23    gun at the time of the incident. At approximately 11:06 on October 28, 2004, Plaintiff Jeremy

24    Ehart's ghillie suit caught on fire. Plaintiff Jeremy Ehart rose from his fighting position and ran

25    towards Plaintiff Steven McClanahan while calling for help. Plaintiff Steven McClanahan, after

26    removing the blouse portion of his ghillie suit, attempted to put out the flames on Plaintiff Jeremy

27    Ehart by smothering the flames and attempting to get Plaintiff Jeremy Ehart to roll on the ground.

1    24.    In the process of attempting to rescue Plaintiff Jeremy Ehart, Plaintiff Steven

2    McClanahan's ghillie suit also caught on fire. A paramedic arrived within two to three minutes of

3    the mayday call and used a fire extinguisher to put out the flames burning Plaintiff Ehart. An

4    unidentified individual used a fire extinguisher to put out the flames burning Plaintiff McClanahan.

5        25.    In addition to airway swelling and lung injury, Plaintiff Jeremy Ehart sustained 50-

6    60% total body surface area burns, including both full thickness and partial thickness burns. His

7    legs, from the groin to the area above the top of his boots, sustained full thickness burns. His right

8    arm from the shoulder down and his left arm from the mid-bicep down sustained a mix of full and

9    partial thickness burns. His face sustained full thickness burns. Plaintiff Jeremy Ehart was not able

10    to return to full active duty as a result of the catastrophic injuries sustained. On the 28th day of

11    April, 2006, Plaintiff Jeremy Ehart was medically discharged from the United States Marine Corps

12    due to the physical conditions sustained in the occurrence made the basis of this lawsuit.

13        26.    Plaintiff McClanahan sustained 20-30% total body surface area burns on his legs and

14    back. The burns varied from second degree partial thickness burns to third degree full thickness

15    burns.

16        27.    As a result of said injuries, Plaintiffs have received, and will in the future continue to

17    receive, medical and hospital care and treatment provided by and through the United States of

18    America. The Plaintiffs, for the sole use and benefit of the United States of America, under the

19    provisions of 42 U.S.C. §§ 2651-2653 et seq. and 10 U.S.C. §1095, and with its express consent,

20    assert a claim for the cost of said medical and hospital care and treatment and the value of future

21    care..

22                        **COUNT ONE**

23    **(Strict Liability – Design Defect – Against Muirhead, Ghillie Suits.com and Does 1 through 5)**

24        AS AND FOR A FIRST COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

25    Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as

26    follows:

27        28.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 27 as if fully set forth

1    herein.

2        29.    Plaintiffs are informed and believe and thereon allege that said Defendants, at all

3    times herein mentioned, were in the business of manufacturing, researching, designing, assembling,

4    testing, producing, constructing, assembling, inspecting, distributing, marketing, and advertising for

5    sale and selling to and for the use of the general public ghillie suits, or components of it,

6    manufactured by said Defendants, which is the subject matter of this Complaint.  Said Defendants

7    are responsible in some manner for placing said product or causing it to be placed into the stream of

8    commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said

9    Defendants, and each of them.

10        30.    At the time said Plaintiffs used said ghillie suits, the suits were substantially the same

11    as when they left the possession of said Defendants.  Any changes made to the suits after they left

12    said Defendants' possession, such as the application of fire retardant spray to said suits, were

13    reasonably foreseeable to said Defendants.

14        31.    Said ghillie suits did not perform as safely as an ordinary consumer would have

15    expected at the time of use, in that the suits were highly flammable despite the fire retardant sprayed

16    on them.  The suits were used in a way that was reasonably foreseeable to said Defendants.

17        32.    Said Defendants, by way of advertisement and through their website, made certain

18    representations and misrepresentations concerning the character or quality of the ghillie suits and

19    fire retardant sold by said Defendants.  The purchaser of the ghillie suits relied upon the

20    misrepresentation made by said Defendants and passed on the ghillie suits and fire retardant, which

21    gave rise to the physical injuries to Plaintiffs as set out above and below.

22        33.    While utilizing said ghillie suits in the manner intended, said Plaintiffs were injured

23    in their health, strength, and activity, and sustained injury to their body and shock and injury to their

24    nervous system and persons, all of which have caused and continue to cause them great mental,

25    physical, and nervous pain and suffering.  These injuries will result in some permanent disability to

26    said Plaintiffs, all to their general damage.  The flammability of said ghillie suits and failure to

27    perform safely was a substantial factor in causing Plaintiffs' harm.

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 52 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 9 of 24

Case 5:06-cv-06597-JW-RS    Document 64    Filed 03/23/2007    Page 21 of 36
Case 5:06-cv-06597-JW-RS    Document 1    Filed 10/19/2006    Page 9 of 23

34.    As a further legal result of the conduct of said Defendants, and each of them, said

Plaintiffs were required to and did employ physicians, surgeons and nurses for examination,

treatment and care, and incurred and will continue to incur additional medical and incidental

expenses, the exact amount of which is unknown to said Plaintiffs at this time.

35.    As a further legal result of the conduct of said Defendants and because of Plaintiffs'

injuries, said Plaintiffs have been, and will continue to be, prevented from working in their

occupations.  The amount of earnings which will be lost to said Plaintiffs is unknown at this time.

Plaintiffs are informed and believe that their inability to work and/or reduction in their earning

capacity will continue in the future, thereby causing a further loss of earnings and/or earning

capacity, the exact amount of which is unknown to said Plaintiffs at this time.

36.    As a further legal result of the conduct of said Defendants, said Plaintiffs have

incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs

are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

### COUNT TWO

**(Strict Liability – Design Defect – Against New York Fire-Shield and Does 6 through 10)**

AS AND FOR A SECOND COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as

follows:

37.    Plaintiffs hereby re-allege and incorporate paragraphs 1 through 36 as if fully set

forth herein.

38.    Plaintiffs are informed and believe and thereon allege that said Defendants, at all

times herein mentioned, were in the business of manufacturing, researching, designing, assembling,

testing, producing, constructing, assembling, inspecting, distributing, marketing, and advertising for

sale and selling to and for the use of the general public Inspecta-Shield fire retardant, or components

of it manufactured by said Defendants, which is the subject matter of this Complaint.  Said

Defendants are responsible in some manner for placing said product or causing it to be placed into

the stream of commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by

1   the acts of said Defendants, and each of them.

2       39.     At the time Plaintiffs used said fire retardant, the product was substantially the same

3   as when they left the possession of said Defendants.

4       40.     Said fire retardant did not perform as safely as an ordinary consumer would have

5   expected at the time of use, in that the ghillie suits worn by Plaintiffs Jeremy Ehart and Steven

6   McClanahan as described above were highly flammable despite the fire retardant being sprayed on

7   them. The fire retardant was used in a way that was reasonably foreseeable to said Defendants.

8       41.     Said Defendants, by way of advertisement and/or through their website, made certain

9   representations and misrepresentations concerning the character or quality of the fire retardant sold

10  by and supplied to Ghillie Suits.com. Ghillie Suits.com relied upon the misrepresentation made by

11  Defendant New York Fire-Shield and Does 6 through 10 and passed on the fire retardant, which

12  gave rise to the physical injuries to said Plaintiffs as set out above and below.

13      42.     While utilizing said fire retardant in the manner intended, said Plaintiffs were injured

14  in their health, strength, and activity, and sustained injury to their body and shock and injury to their

15  nervous system and persons, all of which have caused and continue to cause them great mental,

16  physical, and nervous pain and suffering. These injuries will result in some permanent disability to

17  said Plaintiffs, all to their general damage. The flammability of said ghillie suits despite the use of

18  fire retardant spray and the failure of said spray to perform safely was a substantial factor in causing

19  Plaintiffs' harm.

20      43.     As a further legal result of the conduct of said Defendants, said Plaintiffs were

21  required to and did employ physicians, surgeons and nurses for examination, treatment and care, and

22  incurred and will continue to incur additional medical and incidental expenses, the exact amount of

23  which is unknown to said Plaintiffs at this time.

24      44.     As a further legal result of the conduct of said Defendants and because of Plaintiffs'

25  injuries, said Plaintiffs have been, and will continue to be, prevented from working in their

26  occupations. The amount of earnings which will be lost to said Plaintiffs is unknown at this time.

27  Plaintiffs are informed and believes that their inability to work and/or reduction in his earning

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 54 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 11 of 24

Case 5:06-cv-06507-JW-RS Document 64    Filed 02/29/2007    Page 23 of 36
Case 5:06-cv-06507-JW-RS Document 41    Filed 10/13/2006    Page 14 of 33

1   capacity will continue in the future, thereby causing a further loss of earnings and/or earning

2   capacity, the exact amount of which is unknown to said Plaintiffs at this time.

3       45.    As a further legal result of the conduct of said Defendants, said Plaintiffs have

4   incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs

5   are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

6                               **COUNT THREE**

7       **(Strict Liability – Design Defect – Against Wackenhut and Does 11 through 15)**

8       AS AND FOR A THIRD COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

9   Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

10      46.    Plaintiffs hereby re-allege and incorporate paragraphs 1 through 45 as if fully set

11  forth herein.

12      47.    Plaintiffs are informed and believe and thereon allege that said Defendants, at all

13  times herein mentioned, were in the business of manufacturing, researching, designing, assembling,

14  modifying, testing, producing, constructing, assembling, inspecting, distributing, marketing, and

15  advertising for sale and selling machine guns or components of machine guns manufactured by said

16  Defendants, which is the subject matter of this Complaint.  Said Defendants are responsible in some

17  manner for placing said product or causing it to be placed into the stream of commerce, such that

18  Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said Defendants, and

19  each of them.

20      48.    At the time Plaintiff Jeremy Ehart used said machine gun, the product was

21  substantially the same as when they left the possession of said Defendants.

22      49.    Said machine gun did not perform as safely as an ordinary consumer would have

23  expected at the time of use, in that the amount of muzzle flash and receiver signature on said gun

24  was not normal.  The machine gun was used in a way that was reasonably foreseeable to said

25  Defendants.

26      50.    While utilizing said machine gun in the manner intended, said Plaintiffs were injured

27  in their health, strength, and activity, and sustained injury to their body and shock and injury to their

1    nervous system and persons, all of which have caused and continue to cause them great mental,

2    physical, and nervous pain and suffering.  These injuries will result in some permanent disability to

3    said Plaintiffs, all to their general damage.  The abnormal amount of muzzle flash and receiver

4    signature on the gun was a substantial factor in causing Plaintiffs' harm.

5        51.    As a further legal result of the conduct of said Defendants, said Plaintiffs were

6    required to and did employ physicians, surgeons and nurses for examination, treatment and care, and

7    incurred and will continue to incur additional medical and incidental expenses, the exact amount of

8    which is unknown to said Plaintiffs at this time.

9        52.    As a further legal result of the conduct of said Defendants, and because of Plaintiffs'

10    injuries, said Plaintiffs have been, and will continue to be, prevented from working in their

11    occupations.  The amount of earnings which will be lost to said Plaintiffs is unknown at this time.

12    Plaintiffs are informed and believes that their inability to work and/or reduction in his earning

13    capacity will continue in the future, thereby causing a further loss of earnings and/or earning

14    capacity, the exact amount of which is unknown to said Plaintiffs at this time.

15        53.    As a further legal result of the conduct of said Defendants, said Plaintiffs have

16    incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs

17    are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

18                                    COUNT FOUR

19        (Strict Liability – Failure to Warn – Against Muirhead, Ghillie Suits.com and

20                              Does 1 through 5)

21        AS AND FOR A FOURTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

22    Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as

23    follows:

24        54.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 53 as if fully set forth

25    herein.

26        55.    The ghillie suits that were involved in the subject incident had been distributed,

27    marketed and sold by said Defendants without adequate warnings and/or instructions.

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 56 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 13 of 24

Case 5:06-cv-06507-WRS    Document 64    Filed 09/23/2007    Page 35 of 36
Case 5:06-cv-06507-WRS    Document 1    Filed 10/19/2006    Page 13 of 23

56.    Said ghillie suits had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said suits were highly flammable despite the fire retardant sprayed on them.

57.    The potential risks of said ghillie suits presented a substantial danger to users of the product. Ordinary consumers would not have recognized the potential risks described above.

58.    Said Defendants failed to adequately warn and/or instruct of the potential risks as described above. Said Defendants also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant after repackaging it in smaller quantities than sold by the manufacturer. The instructions provided by said Defendants with the 8-ounce bottles of fire retardant were minimal, and therefore, the amount of retardant applied to the suits was inadequate to prevent an instantaneous and catastrophic fire. The fire-resistant treatment recommended by said Defendants was not sufficient to adequately alter the flammability and fire performance characteristics of the ghillie suit.

59.    Said ghillie suits were used in a way that was reasonably foreseeable to said Defendants.

60.    While utilizing said ghillie suits in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a substantial factor in causing Plaintiffs' harm.

## COUNT FIVE

(Strict Liability -- Failure to Warn -- Against New York Fire-Shield and Does 6 through 10)

AS AND FOR A FIFTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as follows:

61.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 60 as if fully set forth herein.

62.    The Inspecta-Shield fire retardant that was involved in the subject incident had been distributed, marketed and sold by said Defendants without adequate warnings and/or instructions.

63.    Said fire retardant had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said fire retardant, if not applied properly, resulted in material that was highly flammable despite the fire retardant being sprayed on the material.

64.    The potential risks of said fire retardant presented a substantial danger to users of the fire retardant product. Ordinary consumers would not have recognized the potential risks described above.

65.    Said Defendants failed to adequately warn and/or instruct of the potential risks as described above. Said Defendants also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant or instructions regarding how much fire retardant was needed to adequately alter the flammability and fire performance characteristics of the material on which it was being applied. Said fire retardant was used in a way that was reasonably foreseeable to said Defendants.

66.    While utilizing said fire retardant in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a substantial factor in causing Plaintiffs' harm.

## COUNT SIX

(Strict Liability – Failure to Warn – Against Wackenhut and Does 11 through 15)

AS AND FOR A SIXTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

67.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 66 as if fully set forth herein.

68.    The machine gun that was involved in the subject incident had been distributed, modified, marketed and/or sold by said Defendants without adequate warnings and/or instructions.

69.    Said machine gun had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that the amount of muzzle flash and receiver signature on said gun was not normal.

70. The potential risks of said machine gun presented a substantial danger to users of the product. Ordinary consumers would not have recognized the potential risks described above.

71. Said Defendants failed to adequately warn and/or instruct of the potential risks as described above.

72. Said machine gun was used in a way that was reasonably foreseeable to said Defendants.

73. While utilizing said machine gun in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a substantial factor in causing said Plaintiffs' harm.

## COUNT SEVEN

(Negligence – Against Muirhead, Ghillie-Suits.com and Does 1 through 5)

AS AND FOR A SEVENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie-Suits.com and Does 1 through 5 as follows:

74. Plaintiffs hereby reallege and incorporate paragraphs 1 through 73 as if fully set forth herein.

75. Said Defendants were negligent in designing, manufacturing, supplying, and inspecting the ghillie suits worn by Plaintiffs Jeremy Ehart and Steven McClanahan. Said Defendants were also negligent in failing to use reasonable care to warn or instruct about the product's dangerous condition or about facts that made the product likely to be dangerous. Said Defendants were also negligent in failing to test the products they sold. Said Defendants knew or reasonably should have known that the ghillie suits were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

76. Said Defendants knew or reasonably should have known that users would not realize the dangers of said ghillie suits.

77. Said Defendants failed to adequately warn of the danger or instruct on the safe use of said product. Said Defendants did not provide proper instructions on how to apply the "Inspecta-

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 59 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 16 of 24

Case 5:06-cv-06597-JW    Document 64    Filed 02/28/2007    Page 28 of 36
Case 5:06-cv-06597-JW    Document 1    Filed 10/19/2006    Page 16 of 23

1    Shield" fire retardant, nor did they provide an adequate quantity of fire retardant after repackaging it

2    in smaller quantities than sold by the manufacturer. The instructions provided by said Defendants

3    were minimal, and therefore, the amount of retardant applied to the suits was inadequate to prevent

4    an instantaneous and catastrophic fire. The fire-resistant treatment recommended by said

5    Defendants was not sufficient to adequately alter the flammability and fire performance

6    characteristics of the ghillie suit.

7        78.    A reasonable manufacturer, distributor or seller under same or similar circumstances

8    would have warned of said foreseeable dangers or instructed on the safe use of the product.

9        79.    While utilizing said ghillie suits in the manner intended by said Defendants, said

10   Plaintiffs were injured as set forth above. Said Defendants' failure to warn or instruct was a

11   substantial factor in causing Plaintiffs' harm.

12                                    **COUNT EIGHT**

13                (Negligence – Against New York Fire-Shield and Does 6 through 10)

14       AS AND FOR A EIGHTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

15   Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as

16   follows:

17       80.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 79 as if fully set forth

18   herein.

19       81.    Said Defendants were negligent in designing, manufacturing, supplying, and

20   inspecting the Inspecta-Shield fire retardant used by Plaintiffs Jeremy Ehart and Steven

21   McClanahan. Said Defendants were also negligent in failing to use reasonable care to warn or

22   instruct about the product's dangerous condition or about facts that made the product likely to be

23   dangerous. Said Defendants knew, or reasonably should have known, that the fire retardant was

24   dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

25       82.    Said Defendants knew or reasonably should have known that users would not realize

26   the dangers of said Inspecta-Shield fire retardant.

27       83.    Said Defendants failed to adequately warn of the danger or instruct on the safe use of

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 60 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 17 of 24

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 29 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/18/2006    Page 17 of 23

1    said product. Said Defendants did not provide adequate warnings and instructions for use on how to

2    apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant

3    to distributors or monitor how said fire retardant was being repackaged once it was sold by the

4    manufacturer to distributors.

5         84.    A reasonable manufacturer, distributor or seller, under the same or similar

6    circumstances, would have warned of said foreseeable dangers and provided adequate instructions

7    for the safe use of the product.

8         85.    While utilizing said fire retardant spray in the manner intended by said Defendants,

9    said Plaintiffs were injured as set forth above. Said Defendants' failure to warn or instruct was a

10   substantial factor in causing Plaintiffs' harm.

11                                   COUNT NINE

12            (Negligence -- Against Wackenhut and Does 11 through 15)

13        AS AND FOR A NINTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

14   Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

15        86.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 85 as if fully set forth

16   herein.

17        87.    Said Defendants were negligent in designing, manufacturing, modifying, supplying,

18   and inspecting the machine gun used by Plaintiff Jeremy Ehart at the time and place described

19   above. Said Defendants were also negligent in failing to use reasonable care to warn or instruct

20   about the product's dangerous condition or about facts that made the product likely to be dangerous.

21   Said Defendants were also negligent in failing to test the machine gun at issue. Said Defendants

22   knew or reasonably should have known that the machine gun at issue was dangerous or were likely

23   to be dangerous when used in a reasonably foreseeable manner.

24        88.    Said Defendants knew or reasonably should have known that users would not realize

25   the dangers of said machine gun.

26        89.    Said Defendants failed to adequately warn of the danger or instruct on the safe use of

27   said machine gun.

Case 5:08-cv-02099-JF   Document 35   Filed 08/13/2008   Page 61 of 85
Case 5:06-cv-06467-JW   Document 34   Filed 03/23/2007   Page 30 of 36
Case 5:06-cv-06467-RS   Document 1   Filed 10/18/2006   Page 18 of 23

90. A reasonable manufacturer, modifier, distributor or seller under same or similar circumstances would have warned of said foreseeable dangers or instructed on the safe use of the product.

91. While utilizing said machine gun in the manner intended by said Defendants, said Plaintiffs Jeremy Ehart and Steven McLanahan were injured as set forth above. Said Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

## COUNT TEN

**(Breach of Implied Warranty of Fitness for a Particular Purpose – Against Muirhead, Ghillie Suits.com and Does 1 through 5)**

AS AND FOR AN TENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as follows:

92. Plaintiffs hereby reallege and incorporate paragraphs 1 through 91 as if fully set forth herein.

93. Said ghillie suit was purchased for a particular purpose, i.e., safe camouflage.

94. At the time of the sale, said Defendants knew or had reason to know the particular purpose for which each of the Plaintiffs would use the ghillie suits.

95. Said Defendants knew or had reason to know that each of the Plaintiffs relied upon the skill and judgment of said Defendants to create, market, test, and sell a suitable and safe product.

96. Said Defendants, through their agents, employees, subsidiaries, representatives and affiliates, warranted that said ghillie suits were suitable for the particular purpose for which it was utilized by each of the Plaintiffs.

97. At the time it was manufactured and at all subsequent times, said ghillie suits were not as warranted, but were unfit for the particular purpose for which they were intended in that they were defective, causing each of Plaintiffs to suffer damages and consequential damages in an amount in excess of the minimum jurisdictional limits of the Court that are more fully set forth herein.

98.     As a direct and proximate cause of each of the Defendants' breach of the implied warranty of fitness for a particular purpose and the resulting dangers associated with the use of said ghillie suits, each of the Plaintiffs sustained medical expenses from hospitals, physicians, surgeons, at-home care, and incidental expenses, and each Plaintiff will necessarily incur additional such expenses for an indefinite period of time in the future. Each Plaintiff also sustained physical pain and suffering and mental anguish damages in the past and future, as well as a loss of earnings, past, present, and future, and a loss of earning capacity.

<u>COUNT ELEVEN</u>

(Breach of Implied Warranty of Fitness for a Particular Purpose—Against New York Fire-Shield and Does 6 through 10)

AS AND FOR AN ELEVENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants New York Fire-Shield and Does 6 through 10 as follows:

99.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

100.     Said Inspecta-Shield fire retardant was purchased for a particular purpose, i.e., to make materials fire retardant.

101.     At the time of the sale, said Defendants knew or had reason to know the particular purpose for which each of the Plaintiffs would use the Inspecta-Shield fire retardant.

102.     Said Defendants knew or had reason to know that each of the Plaintiffs relied upon the skill and judgment of said Defendants to create, market, test, and sell a suitable and safe product.

103.     Said Defendants, through their agents, employees, subsidiaries, representatives and affiliates, warranted that said Inspecta-Shield fire retardant was suitable for the particular purpose for which it was utilized by each of the Plaintiffs.

104.     At the time it was manufactured and at all subsequent times, said Inspecta-Shield fire retardant was not as warranted, but were unfit for the particular purpose for which it was intended in that it was defective, causing each of Plaintiffs to suffer damages and consequential damages in an

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 63 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 20 of 24

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 32 of 36
Case 5:06-cv-06507-JW    Document 1    Filed 10/18/2006    Page 20 of 23

1   amount in excess of the minimum jurisdictional limits of the Court that are more fully set forth

2   herein.

3   ...........105.    As a direct and proximate cause of each of the Defendants' breach of the implied

4   warranty of fitness for a particular purpose and the resulting dangers associated with the use of said

5   Inspecta-Shield fire retardant, each of the Plaintiffs sustained medical expenses from hospitals,

6   physicians, surgeons, at-home care, and incidental expenses, and each Plaintiff will necessarily incur

7   additional such expenses for an indefinite period of time in the future.  Each Plaintiff also sustained

8   physical pain and suffering and mental anguish damages in the past and future, as well as a loss of

9   earnings, past, present, and future, and a loss of earning capacity.

10                              COUNT TWELVE

11   (Breach of Implied Warranty of Fitness for a Particular Purpose – Against Wackenhut and

12                         Does 11 through 15)

13          AS AND FOR AN TWELFTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart

14   and Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

15          106.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 105 as if fully set

16   forth herein.

17          107.    Said gun was purchased for a particular purpose, i.e., for safe use in military

18   exercises.

19          108.    At the time of the sale, said Defendants knew or had reason to know the particular

20   purpose for which each of the Plaintiffs would use said gun.

21          109.    Said Defendants knew or had reason to know that each of the Plaintiffs relied upon

22   the skill and judgment of said Defendants to create, market, test, modify and sell a suitable and safe

23   product.

24          110.    Said Defendants, through their agents, employees, subsidiaries, representatives and

25   affiliates, warranted that said gun was suitable for the particular purpose for which it was utilized by

26   each of the Plaintiffs.

27          111.    At the time it was manufactured and at all subsequent times, said gun was not as

Case 5:08-cv-02099-JF    Document 35    Filed 08/13/2008    Page 64 of 85
Case 5:08-cv-02099-HRL    Document 1-2    Filed 04/22/2008    Page 21 of 24

Case 5:06-cv-06507-JW    Document 64    Filed 03/23/2007    Page 33 of 36
Case 5:06-cv-06507-RS    Document 1    Filed 10/18/2006    Page 21 of 23

1  warranted, but were unfit for the particular purpose for which it was intended in that it was

2  defective, causing each of Plaintiffs to suffer damages and consequential damages in an amount in

3  excess of the minimum jurisdictional limits of the Court that are more fully set forth herein.

4      112.    As a direct and proximate cause of each of the Defendants' breach of the implied

5  warranty of fitness for a particular purpose and the resulting dangers associated with the use of said

6  Inspecta-Shield fire retardant, each of the Plaintiffs sustained medical expenses from hospitals,

7  physicians, surgeons, at-home care, and incidental expenses, and each Plaintiff will necessarily incur

8  additional such expenses for an indefinite period of time in the future. Each Plaintiff also sustained

9  physical pain and suffering and mental anguish damages in the past and future, as well as a loss of

10  earnings, past, present, and future, and a loss of earning capacity.

## COUNT THIRTEEN

### (Loss of Consortium – Against All Defendants)

13      AS AND FOR A THIRTEENTH COUNT TO THIS COMPLAINT, Plaintiff Kristy Ehart

14  alleges against Defendants, and each of them, as follows:

15      113.    Plaintiff hereby realleges and incorporates paragraphs 1 through 112 as if fully set

16  forth herein.

17      114.    At all times herein mentioned, Plaintiff Kristy Ehart and Plaintiff Jeremy Ehart were

18  husband and wife, respectively. By reason of the injuries to Plaintiff Jeremy Ehart as described

19  herein, Plaintiff Kristy Ehart has been deprived of the consortium of Plaintiff Jeremy Ehart.

## DEMAND FOR JURY TRIAL

21  Plaintiffs hereby demand a jury for all claims which a jury is permitted.

## PRAYER

23  WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

24  follows:

25      1.    For general damages according to proof;

26      2.    For medical and incidental expenses according to proof;

27      3.    For loss of earnings and earning capacity according to proof;

1        4.     For prejudgment interest on all general and special damages according to law;

2        5.     For costs of suit herein; and,

3        6.     For such other and further relief as the court deems just and proper.

4    Dated: 10/17/06

5                                NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

6

7                         By:

8                                CRAIG NEEDHAM
                            *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2     Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3     named parties, there is no such interest to report.

4     Dated:  10/16/06

                                    NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

5

6                             By:

7                                    CRAIG NEEDHAM
                                     *Attorneys for Plaintiffs*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

J:\HAWDOC\51831\71353\pleading\00086038.DOC)
COMPLAINT FOR DAMAGES

## PROOF OF SERVICE

Name of Action: **Ehart v. Ghillie Suits.Com, Inc., et al.**
Court and Action No: **United States District Court, Northern District, San Jose Division**
Action No. C 06 06507 RS

I, Karen D. Tallman, declare that I am over the age of eighteen years and not a party to this action or proceeding. My business address is 2033 North Main Street, Suite 800, PO Box 8035, Walnut Creek, California 94596-3728. On March 23, 2007, I caused the following document(s) to be served:

**NEW YORK FIRE SHIELD, INC.'S CROSS-CLAIM FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, MISLEADING ADVERTISING, EQUITABLE INDEMNITY, TOTAL INDEMNITY, CONTRIBUTION, AND DEMAND FOR JURY TRIAL**

through e-File. E-service in this action was completed on all parties listed on the service list with the United States District Court e-File website.

[X] I electronically served the above referenced document(s)

Craig Needham, Esq.
Kirsten Fish, Esq.
Needham, Davis, Kepner & Young
1960 The Alameda, Suite 210
San Jose, CA 95126
Phone: 408.244.2166
Fax: 408.244.7815
*Attorneys for Plaintiffs Jeremy James Ehart, Kristie Ehart, and Steven Ryan McClanahan*

Daniel J.T. Sciano, Esq.
Tinsman & Sciano, Inc.
10107 McAllister Freeway
San Antonio, TX 78216
Phone: 210.225.3121
Fax: 210.225.6235
*Attorneys for Plaintiffs Jeremy James Ehart, Kristie Ehart, and Steven Ryan McClanahan*

Michael L. Smith, Esq.
Manning & Marder, Kass, Ellrod, Ramirez
One California Street, Suite 1100
San Francisco, CA 94111
Phone: 415.217.6990
Fax: 415.217.6999
*Attorneys for Wackenhut Services, Inc.; The Wackenhut Corporation*

Gregg A. Thornton, Esq.
Danielle K. Lewis, Esq.
Selman Breitman
33 Montgomery, Sixth Floor
San Francisco, CA 94105
Phone: 415.979.0400
Fax: 415.979.2099
*Attorneys for Ghillie Suits.Com, Inc. and Todd Muirhead*

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 23, 2007, at Walnut Creek, California.

_Karen Tallman_
Karen D. Tallman

N0116001/519916-1

PROOF OF SERVICE



# EVANSTON INSURANCE COMPANY

**MARKEL**

Y. ROVINELLI

AUG 2 5 2004

## COMMON POLICY DECLARATIONS

Previous Policy No  *NEW*                         Policy No   CL041400001

POLICY PERIOD   FROM *5-19-04*        TO *5-19-05*              Term   *1 YEAR*
                at 12 01 AM Standard Time at your mailing address shown below

Named Insured   GHILLE SUITS COM INC

Mailing Address   33116 7TH ST              UNION CITY              CA    94587
                  Street Address            City              State   Zip Code

BUSINESS DESCRIPTION       CLOTHING & ACCESSORIES SALES

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS *FOR WHICH A PREMIUM IS INDICATED* THIS
PREMIUM MAY BE SUBJECT TO ADJUSTMENT

|  | Premium |
|---|---|
| Commercial Crime Coverage Part | $ NOT COVERED |
| Commercial General Liability Coverage Part    **25% MINIMUM** | $ 2,500.00 |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Commercial Ocean Marine Coverage Part    **Earned Premium** | $ NOT COVERED |
| Commercial Professional Liability Coverage Part | $ NOT COVERED |
| Commercial Property Coverage Part | $ NOT COVERED |

RENEWED CL041400008
INSP C/F
CLAIM C/F
MRV C/F

|  | |
|---|---|
| Other Charges              Premium Total | $ 2,500.00 |
| Certified Terrorism Coverage | $ NOT TAKEN |
| TAX AND FEES | $ 80.63 |
| **TOTAL** | $ 2,580.63 |

Audit Period  Annual unless otherwise stated

Forms and Endorsements
MSU-100, 011-1061/1

Inspection Ordered ☐ Yes   ☐ No   ☐ None Required    Date              U/W Name          Prot Class
Photograph Ordered ☐ Yes   ☐ No   ☐ None Required    Date

Agency Name/Address.   Cambridge General Agency 100 Pine Suite 250 San Francisco CA 94111
Agency Number     0402

## NO FLAT CANCELLATION S.T.

KM.E
Countersigned   L. OBRIAN/hj7/12/04    By    *Paul Janofsky*    NOV 2 0 2004
                2 0 2004
                Date                              Authorized Representative

011-1058 (11/99)

i-1



**EVANSTON INSURANCE COMPANY**

MARKEL

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  CL041400001

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products/Completed Operations) | $ 2,000,000 | |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Fire Damage Limit | $ 50,000 | any one fire |
| Medical Expense Limit | $ 1,000 | any one person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of Business
[ ] Individual      [ ] Joint Venture      [ ] Partnership      [x] Organization (Other than Partnership or Joint Venture)

Location of All Premises You Own, Rent or Occupy

33116 7TH STREET
UNION CITY, CA 94587

### PREMIUM

| Description of Hazards/ Insured Calssification(s) Premium | Code No | * Premium Basis | Rate | | Advance | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| CLOTHING MFG | 51896 | $)300,000 | 3 012 | 5 317 | $ 905 00 | $ 1095 |
| ADDITIONAL INSURED | 11111 | FLAT | INCLD | FLAT | INCLD | INCLD |

GK
JUL 2 0 2004
MSU

TOTAL
ADVANCE
PREMIUM $ 2,500 00

*(a) Area,(c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u)Units, (o) Other

### FORMS AND ENDORSEMENT (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
CGMS LIAB 6/03

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY

011-1061 /1 (8-94)

i-2

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

        Copyright, Insurance Services Office, Inc., 1997           □

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

### i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Copyright, Insurance Services Office, Inc., 1997

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

    a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

    b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    (1) "Bodily injury" or "personal and advertising injury":

        (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

        (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

        (d) Arising out of his or her providing or failing to provide professional health care services.

    (2) "Property damage" to property:

        (a) Owned, occupied or used by,

        (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

    c. Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

Copyright, Insurance Services Office, Inc., 1997

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over:

   **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

      **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

      **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

   **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98          ☐

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    □

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Evanston Insurance Company

**ADR**

**DEFENDANTS**

Ghillie Suits.Com, Inc.; Todd Muirheard; Jeremy James Ehart; Kristy Ehart; Steven Ryan Mcclanahan

(b) County of Residence of First Listed Plaintiff   Cook, Illinois
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   DeKalb, GA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**FILING**

(c) Attorney's (Firm Name, Address, and Telephone Number)
Bolender & Associates, APLC, 2601 Airport Dr., Suite 360, Torrance, CA 90505; (310) 784-2443

Attorneys (If Known)

**C08   02099 HRL**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 usc 1332
Brief description of cause:
Claims for declaratory relief and reimbursement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 03/08). Civil Summons

**ADR**

# UNITED STATES DISTRICT COURT
## for the

### Northern District of California

**E-FILING**

EVANSTON INSURANCE COMPANY, an Illinois corporation,
_____Plaintiff_____ )
)
)
GHILLIE SUITS.COM, INC, a Georgia corporation; TODD )
MUIRHEARD, a Georgia resident; JEREMY JAMES EHART, a Kansas )
resident; KRISTY EHART, a Kansas resident; and STEVEN RYAN )
McCLANAHAN, a West Virginia resident, and DOES 1 - 100, )
_____Defendants )

Civil Action No.

**Summons in a Civil Action**

**C 08   02099**

**HRL**

To:     TO THE ABOVE NAMED DEFENDANTS
        _____
                    *(Defendant's name)*

A lawsuit has been filed against you.

Within **20** days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

Bolender & Associates
Jeffrey S. Bolender, Esq.
2601 Airport Dr., Suite 360
Torrance, CA 90505

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Richard W. Wieking
_____
Name of clerk of court

**CITA F. ESCOLAN**

Date: **APR 22 2008**
_____
Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

✎ AO 440 (Rev. 03/08)  Civil Summons (Page 2)

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

    (1) personally delivering a copy of each to the individual at this place, _____; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
        who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
        _____; or

    (4) returning the summons unexecuted to the court clerk on _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00 _____.

Date: _____

                                              _____
                                                    Server's signature

                                            _____
                                                  Printed name and title

                                            _____
                                                  Server's address