1160.10643S

1  Alexander F. Stuart - SBN 96141
   WILLOUGHBY, STUART & BENING, INC.
2  50 W. San Fernando St., Suite 400
   San Jose, California 95113
3  Telephone:  (408) 289-1972
   Facsimile:   (408) 295-6375
4
5  Craig Needham - SBN 52010
   Kristen Fish - SBN 217940
6  NEEDHAM, DAVIS, KEPNER & YOUNG, LLP
   1960 The Alameda, Suite 210
7  San Jose, California  95126
   Telephone:  (408) 244-2166
8  Facsimile:   (408) 244-7815
9  TINSMAN & SCIANO, INC.
   Daniel J.T. Sciano (Pending Admission *Pro Hac Vice*)
10 10107 McAllister Freeway
   San Antonio, Texas 78216
11 Telephone:  (210) 225-3121
   Facsimile:   (210) 225-6235
12
13 Attorneys for Defendants
   Jeremy James Ehart, Kristy Ehart, and
14 Steven Ryan McClanahan

15              IN THE UNITED STATES DISTRICT COURT

16         IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                        SAN JOSE DIVISION

18
19 EVANSTON INSURANCE COMPANY,              ) No. C08 02099 JF
   an Illinois corporation,                 )
20                                          )
              Plaintiffs,                   ) **MEMORANDUM OF POINTS AND**
21                                          ) **AUTHORITIES OF DEFENDANTS**
   vs.                                      ) **JEREMY JAMES EHART, KRISTY**
22                                          ) **EHART AND STEVEN RYAN**
   GHILLIES SUITS.COM, INC, a Georgia       ) **McCLANAHAN IN OPPOSITION TO**
23 corporation; TODD MUIRHEARD, a Georgia   ) **EVANSTON INSURANCE**
   resident; JEREMY JAMES EHART, a Kansas   ) **COMPANY'S  MOTIONS TO DISMISS**
24 resident; KRISTY EHART, a Kansas resident; ) **COUNTERCLAIMS**
   and STEVEN RYAN McCLANAHAN, a West       )
25 Virginia resident, and DOES 1-10 ,       ) Hearing Date:  September 19, 2008
                                            ) Time:          9:30 a.m.
26              Defendants.                  ) Courtroom:     3
                                            )
27
28

1

**TABLE OF CONTENTS**

2

**Page No.**

3    INTRODUCTION ................................................................................1

4    FACTS ...........................................................................................1

5    GOVERNING LAW ...........................................................................2

6            A.    Motion to Dismiss ....................................................2

7            B.    Alternative Motion to Strike ........................................2

8    ARGUMENT.....................................................................................3

9    I.    EVANSTON'S MOTION TO DISMISS MISCHARACTERIZES
            THE NATURE OF THE COUNTERCLAIMS, WHICH SEEK A
10           JUDICIAL DECLARATION OF EVANSTON'S RIGHT TO
            ASSERT THE POLICY LIMITS AT ISSUE IN ITS COMPLAINT
11           FOR DECLARATORY RELIEF...........................................3

12           A.    The Counterclaims Seek a Declaratory Judgment, Not
                     Damages .............................................................3
13
            B.    Evanston Has Made the Waiver of its Policy Limits an Issue
14                   in the Case...........................................................4

15           C.    The Declaratory Judgment Act Authorizes the Relief Sought
                     By Counter-Claimants..............................................5
16
            D.    The Counterclaims Do Not Seek to "Trap" Evanston, Who
17                   Already Has Breached the Duty of Good Faith and Fair
                     Dealing and Can Do Nothing to Undo That Breach.............7
18
            E.    The Bad Faith Cases Cited by Evanston Do Not Apply to a
19                   Dispute over the Applicable Limits of Evanston's Insurance
                     Initiated by Evanston Itself........................................8
20
            F.    It Is Evanston Who Seeks an Improper Advisory Opinion
21                   By Asking the Court to Declare What Evanston's Obligations
                     Once Were, and Not What They Are Now.......................9
22
     II.    EVANSTON'S MOTION TO STRIKE IS EQUALLY DEVOID OF
23           MERIT .................................................................................10

24
     CONCLUSION .................................................................................10
25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

Page No.

3

<u>California Authority</u>

4

*Comunale v. Traders Y General Ins. Co.*

5

(1958) 50 Cal.2d 654 ........................................................................................5,9

6

*Doser v. Middlesex Mutual Ins. Co.*
(1980) 101 Cal.App.3d 883 ...................................................................................9

7

*Finkelstein v. 20th Century Ins. Co.*

8

(1993) 11 Cal.App.4th 926 ...................................................................................9

9

*Hamilton v. Maryland Casualty Co.*
(2002) 27 Cal.4th 718 ..........................................................................................9

10

*Kransco v. Empire Surplus Lines Ins. Co.*

11

(2000) 23 Cal.4th 390 ..........................................................................................5

12

<u>Federal Authority</u>

13

14

*ACandS, Inc. v. Aetna Cas .& Surety Co.*
(3rd Cir. 1981) 666 F.2d 819 .............................................................................7,8

15

*Aetna Casualty and Sur. Co. v. Merritt*

16

(9th Cir. 1992) 974 F.2d 1196 ..............................................................................6

17

*American States Ins. Co. v. Kearns*
(9th Cir. 1994) 15 F.3d 142 ..................................................................................6

18

*Associated Indem. v. Fairchild Industries*

19

(2nd Cir. 1992) 961 F.2d 32 .................................................................................7

20

*Bilbrey v. Brown*
(9th Cir. 1984) 738 F.2d 1462 ............................................................................6,7

21

*Eureka Federal S & L v. Amer. Cas. Co. of Reading*

22

(9th Cir. 1989) 873 F.2d 229 .............................................................................6,7

23

*Fantasy, Inc. v. Fogerty*
(9th Cir. 1993) 984 F.2d 1524 ..........................................................................3,11

24

*Griffin v. Allstate Ins. Co.*

25

(C.D.Cal. 1996) 920 F.Supp. 127.........................................................................10

26

*Haddock v. Board of Dental Examiners of Calif.*
(9th Cir. 1985) 777 F.2d 462 .............................................................................3, 4

27

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*

28

(1941) 312 U.S. 270...........................................................................................6

ii

1

*Neely v. Benefits Review Bd.*
(1st Cir. 1999) 139 F.3d 276…………………………………………………………...7

2

*Neitzke v. Williams*
(1989) 490 U.S. 319……………………………………………………………………3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2    After conceding that a dispute over its policy limits is ripe for adjudication, Evanston

3  Insurance Company seeks dismissal of two counterclaims on grounds that a dispute over its *waiver*

4  of those limits is premature.  Evanston's argument is counter-intuitive.  If Evanston can force two

5  seriously injured Marines to litigate the application of its policy limits before they obtain a

6  judgment, Evanston can defend two counterclaims asserting that Evanston has waived those limits

7  by rejecting a reasonable policy limits demand.

8

**FACTS**

9    On October 11, 2007, Evanston rejected a reasonable settlement demand made by counter-

10  claimants Jeremy Ehart, Kristy Ehart and Steven McClanahan for the $2 million aggregate limits of

11  Evanston's policy.  (Counterclaim of Ghillie Suits.com and Muirhead ["Ghillie counterclaim"], ¶¶

12  12 and 14; counterclaim of Eharts and McClanahan ["Ehart counterclaim"], ¶¶ 16 and 18.)  The

13  demand was based on two occurrences arising from two fires occurring on October 28, 2004.

14  (Ghillie counterclaim, ¶¶ 9-12; Ehart counterclaim, ¶¶ 9-14.)

15    The first fire occurred when a receiver flash from a machine gun ignited Ehart's ghillie suit.

16  (Ghillie counterclaim, ¶ 9; Ehart counterclaim, ¶ 9.)  The second fire occurred when McClanahan,

17  initially a safe 40 meters from Ehart, voluntarily entered the zone of danger to rescue Ehart, and

18  flames ignited his ghillie pants.  (Ghillie counterclaim, ¶¶ 10-11; Ehart counterclaim., ¶¶ 10, 12-13.)

19  Evanston's policy provided liability coverage of $1 million per occurrence subject to an aggregate

20  limit of $2 million for product liability claims.  (Ghillie counterclaim, ¶ 13; Ehart counterclaim, ¶

21  15.)

22    Evanston rejected the demand not based on the value of the case, or the probability of a

23  judgment for less than $2 million, or even the probability of Jeremy Ehart or Steven McClanahan

24  recovering less than $1 million.  (Ghillie counterclaim, ¶¶ 12 and 14; Ehart counterclaim, ¶¶ 16 and

25  18.)  Evanston rejected the demand based entirely on the erroneous contention that there was one

26  fire, and therefore only one occurrence.  (Ghillie counterclaim, ¶¶ 14 and 16; Ehart counterclaim, ¶¶

27  16 and 18.)

28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS JEREMY JAMES EHART, KRISTY EHART, AND STEVEN RYAN
McCLANAHAN IN OPPOSITIN EVANSTON INUSRNACE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS

1    On April 22, 2008, six months after it rejected the policy limits demand, Evanston filed a

2  complaint for declaratory judgment alleging that a determination of its policy limits was ripe for

3  adjudication.  (Evanston's complaint, ¶¶ 4, 27, 28 and 30.)  By conceding that a determination of its

4  policy limits is ripe for adjudication now, Evanston has conceded that its waiver of those limits is

5  ripe for adjudication as well.

6                              **GOVERNING LAW**

7    **A.    Motion to Dismiss**

8    Evanston has moved to dismiss the counterclaims of its insureds, the Eharts and McClanahan

9  under Federal Rules of Civil Procedure, Rule 12 (b) (6), on grounds that the counterclaims

10  purportedly fail to state a claim upon which relief can be granted.  In deciding Rule 12 (b) (6)

11  motions, the Court must construe the allegations of the counterclaims as true, even if the facts as

12  alleged appear improbable.  (*Neitzke v. Williams* (1989) 490 U.S. 319, 328-329.)  The test is not

13  whether the counter-claimants' legal theories are correct, but rather whether the facts as alleged

14  support any valid claim entitling the counter-claimants to relief.  (*Haddock v. Board of Dental*

15  *Examiners of Calif.* (9th Cir. 1985) 777 F.2d 462, 464.)

16    **B.    Alternative Motion to Strike**

17    Evanston has also moved, alternatively, for an order striking allegations that it breached the

18  implied covenant of good faith and fair dealing.  The alternative motion is brought under Rule 12

19  (f), which permits the Court to strike any "redundant, immaterial, impertinent or scandalous

20  matter."  Evanston has not indicated the grounds for its motion to strike, although it appears

21  Evanston is attempting to assert that the allegations are immaterial or impertinent.  "Immaterial" has

22  been defined as allegations which have no bearing on the controversy before the court.  (*Fantasy,*

23  *Inc. v. Fogerty* (9rh Cir. 1993) 984 F.2d 1524, 1527 [disapproved on other grounds in *Fogerty v.*

24  *Fantasy, Inc.* (1994) 510 U.S. 517, 534-535].)  "Impertinent" has been defined as allegations that

25  are not responsive or relevant to issues involved in the action, and which could not be admitted as

26  evidence in the action.  (*Id.* at 1527.)

27

28

# ARGUMENT

## I.   EVANSTON'S MOTION TO DISMISS MISCHARACTERIZES THE NATURE OF THE COUNTERCLAIMS, WHICH SEEK A JUDICIAL DECLARATION OF EVANSTON'S RIGHT TO ASSERT THE POLICY LIMITS AT ISSUE IN ITS COMPLAINT FOR DECLARATORY RELIEF.

### A.   The Counterclaims Seek a Declaratory Judgment, Not Damages.

Evanston challenges both counterclaims on grounds that they purportedly are actions for damages masquerading as actions for declaratory judgment, even though no prayer for damages has been pled.  Ignoring the true relief sought by counter-claimants – i.e., a declaration that Evanston has waived its policy limits – the insurer argues that counter-claimants really are seeking an open-ended judgment for money damages.  (Evanston's motion to dismiss Ehart counterclaim, p. 11:11-16.)  Not so.  Counter-claimants are only seeking a declaration that Evanston may not assert any of its policy limits in response to whatever judgment is entered in the underlying action.  It is *Evanston's insureds* who face an open-ended judgment for damages.  The question presented in this case is whether Evanston may assert one or more policy limits in response to that judgment, or whether Evanston's right to do so has been waived.

The function of the Court in deciding Rule 12 (b) (6) motions is to assume the truth of the facts alleged and examine the facts for any legal theory supporting relief.  (*Haddock v. Board of Dental Examiners of Calif., supra,* 777 F.2d at 464.)  Counter-claimants invite the Court to examine the counterclaims as they truly read, not as Evanston pretends they read.  The counterclaims seek a *declaration* based on the following facts:

- Jeremy Ehart and Steven McClanahan suffered serious, debilitating injuries caused by two fires (Ghillie counterclaim, ¶¶ 9-12; Ehart counterclaim, ¶¶ 9-14);
- The damages suffered by Jeremy Ehart and Kristy Ehart clearly exceed $1 million (Ghillie counterclaim, ¶¶ 12 and 14; Ehart counterclaim, ¶¶ 14 and 16);

3

1    • The damages suffered by Steven McClanahan clearly exceed $1 million

2       (*id.*); and

3    • Evanston rejected a reasonable settlement demand for $2 million based

4       on the liability of Ghillie Suits.com and Muirhead  for the injuries caused

5       by the two fires occurring on October 28, 2004 (Ghillie counterclaim,

6       ¶¶ 14 and 16; Ehart counterclaim, ¶¶ 16 and 18).

7    California law provides that an insurer who rejects a reasonable settlement demand within its

8    policy limits becomes liable for the entirety of any compensatory damages awarded against its

9    insured, even those amounts which exceed the policy limits.  (*Kransco v. Empire Surplus Lines Ins.*

10   *Co.* (2000) 23 Cal.4th 390, 401.)  The waiver of the policy limits derives from the insurer's failure

11   to perform its contract; the allowance of a recovery in excess of the policy limits places the insured

12   "in the same position as if the contract had been performed."  (*Comunale v. Traders Y General Ins.*

13   *Co.* (1958) 50 Cal.2d 654, 661.)

14   Counter-claimants seek a declaration that Evanston has waived the right to assert its policy

15   limits in response to any judgment for compensatory damages in the underlying action.  The relief

16   sought is not damages.  It is simply a declaration of the parties' rights and obligations arising from

17   Evanston's failure to accept a reasonable settlement demand on October 11, 2007.

18

19           **B.        Evanston Has Made the Waiver of its Policy Limits an Issue
                          in the Case.**

20   In its complaint for declaratory judgment, Evanston seeks a declaration of its applicable policy

21   limits, and according to its motion to dismiss, reimbursement of any amounts paid above $1 million.

22   (Evanston's motion to dismiss Ehart counterclaim, p.3:23-26.)  A determination of the *applicable*

23   policy limits requires the consideration of any fact proving that Evanston waived its policy limits,

24   and Evanston certainly has no right to *reimbursement* if its policy limits were waived.  Evanston

25   thus has invited consideration of the issue pled by counter-claimants; its *own* complaint for

26   declaratory judgment makes the issue of waiver ripe.

27   The only credible reason for Evanston's complaint for declaratory judgment is Evanston's

28

1   need to know its exposure before the underlying action goes to trial.  Counter-claimants submit that

2   the Court should adjudicate all of Evanston's exposure at one time, not some parts now and the

3   more critical parts later.  If Evanston prevails on its complaint, the Court will declare that its policy

4   limits are $1 million.  If Evanston loses, the Court should declare what its policy limits are after

5   rejecting a reasonable settlement demand – in other words, what they are *presently*, and not what

6   they were before the opportunity to settle was declined.

7

              **C.**      **The Declaratory Judgment Act Authorizes the Relief Sought**

8                         **By Counter-Claimants.**

9        The Ninth Circuit has ruled that the Declaratory Judgment Act permits the hearing of disputes

10   over an insurer's ultimate obligation to indemnify before claims triggering its duty to indemnify

11   have been resolved.  (*American States Ins. Co. v. Kearns* (9th Cir. 1994) 15 F.3d 142, 144, citing

12   *Maryland Casualty Co. v. Pacific Coal & Oil Co.* (1941) 312 U.S. 270; *Aetna Casualty and Sur.*

13   *Co. v. Merritt* (9th Cir. 1992) 974 F.2d 1196, 1199; *Eureka Federal S & L v. Amer. Cas. Co. of*

14   *Reading* (9th Cir. 1989) 873 F.2d 229, 231-232.)  Evanston presumably knows this law, since its

15   *own* complaint for declaratory judgment precedes the resolution of the underlying action.  In

16   *Maryland Casualty Co. v. Pacific Coal & Oil Co., supra,* the Supreme Court offered the following

17   test for determining ripeness:

18

19                  Basically, the question in each case is whether the facts alleged, under
               all the circumstances, show that there is a substantial controversy,
               between parties having adverse legal interests, of sufficient immediacy

20                  to warrant the issuance of a declaratory judgment.

21   (*Maryland Casualty, supra,* 312 U.S. at 273.) The Ninth Circuit has not fashioned a bright line test

22   for satisfying the *Maryland Casualty* factors, but it has interpreted those factors to require practical

23   usefulness in settling the legal relations of parties:

24

25                  Thus, declaratory relief is appropriate "(1) when the judgment will serve
               a useful purpose in clarifying and settling the legal relations in issue, and
               (2) when it will terminate and afford relief from the uncertainty, insecurity,

26                  and controversy giving rise to the proceeding."

27   (*Eureka Federal, supra,* 873 F.2d at 231, quoting *Bilbrey by Bilbrey v. Brown* (9th Cir. 1984) 738

28   F.2d 1462, 1470.)

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS JEREMY JAMES EHART, KRISTY EHART, AND STEVEN RYAN
McCLANAHAN IN OPPOSITIN EVANSTON INUSRNACE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS

1    Other courts have logically concluded that the question is one of practicality. Is there a

2  "practical likelihood" that the contingent duty to pay will occur? (*Associated Indem. v. Fairchild*

3  *Industries* (2nd Cir. 1992) 961 F.2d 32, 35, citing 10A C. Wright, A. Miller & M. Kane, Federal

4  Practice and Procedure (2d ed. 1983) § 2757, at 587.) Is there a "minimum likelihood" that the

5  relief sought will actually matter? (*Neely v. Benefits Review Bd.* (1st Cir. 1999) 139 F.3d 276, 279.)

6  Evanston's complaint concedes such a practical or minimum likelihood. How else would it be

7  timely for Evanston to seek a declaration of its applicable policy limits now?

8    In *Eureka Federal, supra,* 873 F.2d at 231-232, the Ninth Circuit held it was proper to seek

9  declaratory judgment of an insurer's applicable policy limits prior to resolution of the underlying

10  action because of the insurer's duty of good faith and fair dealing to settle claims. Recognizing that

11  uncertainty over the amount of coverage would skew the settlement process, the court held that the

12  parties had an interest of "sufficient immediacy and reality" to warrant the court's exercise of

13  jurisdiction. (*Id.* at 232.) Similar to the circumstances of this case, the Ninth Circuit noted that a

14  settlement could not be achieved without a resolution of the limits of insurance. (*Id.* at 232.)

15    Evanston commenced this action because of uncertainty over the limits of its duty to

16  indemnify Ghillie Suits.com and Muirhead. That uncertainty includes not just the amount of

17  Evanston's policy limits, but also Evanston's right to assert *any policy limit* after rejecting a

18  reasonable policy limits demand. It is not enough for the Court to declare whether Evanston's

19  policy limits are $1 million or $2 million where the counterclaims allege that the damages suffered

20  by the Eharts and McClanahan exceed the higher limitation of coverage. A settlement cannot be

21  achieved without a resolution of the *full application* of Evanston's policy limits, including whether

22  Evanston's rejection of a reasonable settlement demand has legally *waived* them.

23    In *ACandS, Inc. v. Aetna Cas .& Surety Co.* (3rd Cir. 1981) 666 F.2d 819, 823, cited by the

24  Ninth Circuit in *Eureka Federal, supra,* the court held that a district court had committed error in

25  dismissing an action for declaratory judgment of an insurer's duty to indemnify before underlying

26  claims against the insured were resolved. Observing that resolution of the duty to indemnify would

27  not result in "any immediate payment of damages," the court ruled that the insurer's duty to *settle*

28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS JEREMY JAMES EHART, KRISTY EHART, AND STEVEN RYAN
McCLANAHAN IN OPPOSITIN EVANSTON INUSRNACE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS

1  rendered the dispute over its duty to indemnify an actual controversy:

2

3       It would turn reality of the claims adjustment process on its head to
        hinge justiciablity of an insurance agreement on the maturation of a
        suit to a judgment when the overwhelming number of disputes are
4       resolved by settlement.  The respective obligations of insured and
        insurers, when disputed, require determination much in advance of
5       judgment since they will designate the bearer of ultimate liability
        in the underlying cases and hence the bearer of the onus and risks of
6       settlement.  So viewed, the controversy is quite proper for a judicial
        determination now.  To delay for the sake of more concrete
7       development would prevent the litigants from shaping a settlement
        strategy and thereby avoiding unnecessary costs.
8  (*Id.* at 823.)

9       Evanston's action concedes by its very nature that its insureds will be found liable for the

10  debilitating injuries suffered by Ehart and McClanahan.  The insureds have conceded that the

11  damages suffered by the Eharts exceed $1 million, that the damages suffered by McClanahan

12  exceed $1 million, and that together the damages of all three claimants exceed Evanston's higher

13  limitation of coverage.  (Ghillie counterclaim, ¶¶ 12 and 14.)  To paraphrase the *ACandS* court, it

14  would turn the claims adjustment process on its head to hinge the justiciability of the full

15  application of Evanston's policy limits on the maturation of a judgment in the underlying action.  If,

16  as Evanston concedes, the time is ripe to determine the application of Evanston's policy limits

17  before it breached the duty of good faith and fair dealing, then the time is equally ripe to determine

18  the application of Evanston's policy limits after such breach occurred.

19          **D.     The Counterclaims Do Not Seek to "Trap" Evanston, Who
                     Already Has Breached the Duty of Good Faith and Fair
20                   Dealing and Can Do Nothing to Undo That Breach.**

21      Without citing any case law, Evanston complains that the counterclaims are inconsistent with

22  the Declaratory Judgment Act because they purportedly seek to "trap" Evanston, rendering it

23  powerless to "alter its conduct or course of action."  (Evanston's motion to dismiss Ehart

24  counterclaim, p. 11: 21-24.)  Not so.  *The conduct for which counterclaimants seek a declaratory*

25  *judgment is complete.*  Evanston *already* has breached its duty of good faith and fair dealing;

26  Evanston no longer can undo that breach.  Whether the Court decides the waiver of Evanston's

27  policy limits now or sometime down the road, there is nothing Evanston can do to alter its October

28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS JEREMY JAMES EHART, KRISTY EHART, AND STEVEN RYAN
McCLANAHAN IN OPPOSITIN EVANSTON INUSRNANCE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS

1  11, 2007 rejection of a reasonable policy limits demand. By adjudicating now whether its limits of

2  liability have been waived, Evanston at least can assess whether taking the underlying action to trial

3  makes sense, or whether it might be better to attempt a bleated settlement of the underlying action

4  before a jury decides the issue of damages.

5          **E.      The Bad Faith Cases Cited by Evanston Do Not Apply to a
                     Dispute over the Applicable Limits of Evanston's Insurance**
6          **Initiated by Evanston Itself.**

7          Evanston cites a number of California cases holding that a cause of action for damages arising

8  from breach of the duty of good faith and fair dealing may not be brought before the underlying

9  action has resolved.[1]  Counter-claimants agree. As noted above, the counterclaims are not actions

10  for damages. They are actions for *declaratory judgment*, brought in response to Evanston's action

11  for declaratory judgment.

12          In none of the cases cited by Evanston, did the insurer initiate an action for declaratory

13  judgment asking the court to determine its applicable limits of liability, and requesting

14  reimbursement above a certain amount. Moreover, in none of the cases cited by Evanston, did an

15  insured file a counterclaim for declaratory judgment seeking to determine whether the insurer's

16  limits of liability had been waived. Each of the cases involved an action for damages brought after

17  a judgment or settlement. The issue presented was when the insured, or an assignee of the insured,

18  could first state a cause of action for *damages,* not a cause of action for declaratory relief. In the

19  cases involving a settlement, the courts held that the failure to obtain an excess judgment was fatal

20  to an action for damages.

21          There is no settlement here preventing the possibility of an excess judgment. Evanston still

22  faces liability for breach of the implied covenant of good faith and fair dealing when the underlying

23  action goes to trial. Evanston could have waited until after that trial to determine its limits of

24  liability; no law required that it sue for declaratory relief early, and no law required that it sue the

25

26

27  [1] The cases cited by Evanston are *Comunale, supra,* 50 Cal.2d 654; *Hamilton v. Maryland Casualty Co.*
    (2002) 27 Cal.4th 718; *Finkelstein v. 20th Century Ins. Co.* (1993) 11 Cal.App.4th 926; and *Doser v.*
28  *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883. (Evanston's motion to dismiss counterclaim of
    Eharts and McClanahan, pp. 7-9.)

8

1  persons suing its insureds now. Evanston chose otherwise, pleading that the time for determining

2  its applicable limits of liability was ripe. If two seriously injured Marines must defend Evanston's

3  lawsuit to determine the applicable limits of Evanston's policy, it is reasonable and appropriate that

4  Evanston defend its waiver of those limits at the same time.

5      Interestingly, Evanston cites *Griffin v. Allstate Ins. Co.* (C.D.Cal. 1996) 920 F.Supp. 127 for

6  the proposition that a court will not question an insurer's performance of its good faith obligations

7  until benefits are due under the policy. (Evanston's motion to dismiss Ehart counterclaim, p. 6:25-

8  28.) Counterclaimants submit that benefits were due when they made a reasonable settlement

9  demand that Evanston pay them. The time is thus ripe for the Court to question whether Evanston

10  breached its duty of good faith and fair dealing.

11      **F.    It Is Evanston Who Seeks an Improper Advisory Opinion**
        **By Asking the Court to Declare What Evanston's Obligations**

12      **Once Were, and Not What They Are Now.**

13      Evanston argues that the counterclaims seek abstract relief, not actual relief, as though

14  counter-claimants are seeking an improper advisory opinion. (Evanston's motion to dismiss Ehart

15  counterclaim, pp. 12-13.) In reality, however, it is Evanston who seeks an advisory opinion, since it

16  asks the Court to declare the limits of liability *before* Evanston rejected a reasonable settlement

17  demand, not the limits of liability when judgment eventually will be entered. While it certainly is

18  necessary to determine whether Evanston's obligation was limited to $1 million or $2 million

19  initially, the Court will need to address more than that original obligation to resolve the *actual and*

20  *present controversy* which exists today.

21      In the prayer of its own complaint, Evanston invites the Court to determine the rights and

22  obligations of Evanston, the Eharts, McClanahan and Evanston's insureds. (Evanston's complaint,

23  p. 16: 6-8.) By their respective counterclaims, the Eharts, McClanahan, Ghillie Suits.com and

24  Muirhead make similar requests, only they ask the Court for a full declaration in light of all of the

25  facts alleged. Since the purpose of the Declaratory Judgment Act is to "avoid accrual of avoidable

26  damages to one not certain of his rights" (Evanston's motion to dismiss Ehart counterclaim, p.

27  10:19-20), it makes more sense that the Court declare Evanston's true policy limits while there is

28  _____

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS JEREMY JAMES EHART, KRISTY EHART, AND STEVEN RYAN
McCLANAHAN IN OPPOSITIN EVANSTON INUSRNACE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS

1  still the opportunity to settle the underlying case. Once judgment is entered, Evanston no longer

2  will be able to "avoid the accrual of avoidable damages," since the damages caused by its October

3  11, 2007 breach of the duty to settle will then be fixed.

4

5  **II.    EVANSTON'S MOTION TO STRIKE IS EQUALLY DEVOID OF MERIT.**

6      Evanston asks the Court to strike certain allegations of the counterclaims if the Court

7  determines that the counterclaims are ripe. The allegations are the counter-claimants' references to

8  breach of the implied covenant of good faith and fair dealing. Evanston gives no grounds for its

9  motion to strike, other than "the facts and legal argument" in support of its motion to dismiss.

10  (Evanston's motion to dismiss Ehart counterclaim, p. 14:6-7.) As noted above, a motion to strike is

11  permitted where the allegations sought to be stricken are redundant, immaterial, impertinent or

12  scandlous. (Federal Rules of Civil Procedure, Rule 12 (f).) Evanston has not complained of

13  redundancy or scandal, so it appears to rely on the "immaterial" and "impertinent" standards.

14      Neither applies to the allegations of the counterclaims.

15      Allegations are "immaterial" if they have no bearing on the controversy before the court.

16  (*Fantasy, Inc. v. Fogerty, supra*, 984 F.2d at 1527.) Allegations are "impertinent" if they are not

17  responsive or relevant to issues involved in the action, and cannot be admitted as evidence. (*Id.*)

18  Evanston offers neither facts nor law supporting the conclusion that its breach of the implied

19  covenant of good faith and fair dealing is immaterial or impertinent. Evanston's breach is what

20  triggers the waiver of its policy limits, and thus the breach has a direct bearing on the controversy

21  before the court. Evanston's breach also is responsive and relevant to the issues Evanston itself has

22  raised, and it certainly is evidence that can be admitted when the full *actual and present controversy*

23  goes to trial.

24                              **CONCLUSION**

25      After opening the door to a determination of its applicable policy limits, Evanston hopes to

26  close the door before its insureds and the persons who have sued its insureds can litigate whether

27  those limits have been waived. The real controversy is not the application of Evanston's policy

28

1   limits before it rejected a settlement demand within those limits.  The real controversy is whether

2   Evanston still has policy limits after it rejected a reasonable policy limits demand.  Since the Ninth

3   Circuit encourages declaratory judgment to resolve disputes over uncertainties in the application of

4   an insurer's limits of coverage, it follows that the counterclaims present a justiciable controversy

5   warranting declaratory judgment now.

6        For all of the reasons stated, counterclaimants Jeremy Ehart, Kristy Ehart and Steven

7   McClanahan respectfully request that the Court deny Evanston's motions to dismiss.

8

9   DATED: August 29, 2008

                                        WILLOUGHBY, STUART & BENING

10

11

                                    By  /s/Alexander F. Stuart

12                                      ALEXANDER F. STUART
                                        Attorneys for Defendants and Counter-Claimants,
13                                      Jeremy James Ehart, Kristy Ehart
                                        and Steven Ryan McClanahan
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS JEREMY JAMES EHART, KRISTY EHART AND STEVEN RYAN McCLANAHAN IN OPPOSITION EVANSTON INSURANCE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS